[Civ. No. 8863. Third Dist. Dec. 18, 1956.]

THE PEOPLE ex rel. ERNEST D. BREUNING, as County Surveyor, etc., Respondents, v. RAYMOND H. BERRY et al., Defendants; SCOTT LUMBER COMPANY (a Corporation), Appellant.

Glenn D. Newton and Lee A. Lopez for Appellant.

Randall J. Presleigh, District Attorney (Shasta), and D. Jack Darley, Deputy District Attorney, for Respondents.

SCHOTTKY, J.—Ernest D. Breuning, County Surveyor of Shasta County, and as such having exclusive jurisdiction within the unincorporated area of said county to issue building permits and enforce the provisions of division 13, part 3, chapter 2, of the Health and Safety Code of the State of California, commonly known as the Riley Act, commenced an action to compel defendants above named to secure a building permit for a planing mill constructed by defendant Scott Lumber Company in unincorporated area in Shasta County.

Defendants filed an answer setting forth that said corporation was not required by said Riley Act to obtain a permit for said building. At the trial the issue was whether or not the planing mill of defendant corporation was a building exempted from the operation of the Riley Act by the provisions

of subsection (a) of section 19100 of the Health and Safety Code which reads:

"(a) Any building not intended primarily for occupancy by human beings and located entirely outside the limits of a city or city and county."

The trial court decided that the said planing mill was not exempted from the requirements of said act and ordered that defendant corporation apply for a building permit for its planing mill and pay therefor the required fees. The action was dismissed as to defendant Berry. Defendant Scott Lumber Company has appealed from the decree and/or writ of injunction.

The sole question involved upon this appeal is whether the planing mill of appellant is a "building not intended primarily for occupancy by human beings." The trial court filed a memorandum opinion which we believe correctly states the facts as shown by the record and the law applicable thereto, and we therefore adopt the following portion thereof as part of the opinion of this court:

". . . [T]he following facts, substantially uncontested, have been made to appear from the pleadings and the evidence. Defendant corporation owns and operates a lumber mill at Burney, California, in unincorporated territory in Shasta County. Defendant Berry is vice-president and general manager of the corporation, and is in direct charge of the Burney mill. Among the mill buildings was a planing mill. A portion of this structure, housing the planing machinery, burned down in November, 1953. In accordance with plans previously prepared with a view to a renovated mill, the remaining portion, housing lumber sheds and a lumber chain, was shifted on its base; and the burned portion was replaced with a new structure connected to the old. This new structure is 120 feet by 130 feet in size; and consists of a corrugated metal roof and gables over a steel frame, with the sides open. It houses two planers, served by seven men each on a 40-hour per week shift. Another 10 or 12 lumber handlers work back and forth along the chain from the planers to the lumber sheds, and other employees enter the premises briefly to unload lumber for the planers. No one sleeps, cooks, eats, smokes or rests in the planing mill. The new structure was erected by defendant corporation, under the immediate direction of defendant Berry; and no building permit was applied for, defendants having the belief, reinforced by advice of counsel, that none was legally required.

"The statutory provisions under which this case arise are to be found in chapter 2, part 3, division XIII (§§ 19100 to 19170) of the Health and Safety Code. This chapter derives in the first instance from chapter 601, Statutes of 1933, commonly known as the Riley Act, a statute passed as an urgency measure shortly following the notorious Long Beach earthquake. Although many amendments have since been made, the present statutory provisions may be referred to for convenience as the Riley Act.

"The Act provides that all buildings subject thereto shall be designed and constructed to resist horizontal forces as specified in sections 19150 and 19151, Health and Safety Code; and that, to ensure such result, application shall be made for a building permit, in accordance with sections 19130, 19131 and 19132 of the Health and Safety Code. Relator as county surveyor is charged with the issuance of permits, pursuant to Sections 19121 and 19123, Health and Safety Code.

"Certain buildings, including 'any building not intended primarily for *occupancy* by human beings, and located entirely outside the limits of a city or city and county' are by Section 19100 of the Health and Safety Code excepted from the operation of the act.

"The essential point at issue in this case is whether the quoted term *occupancy* means *habitation* in the sense of residence or whether it means *use* in the sense of habitual physical presence; as in these senses this planing mill clearly is not inhabited by anybody, and equally clearly is used by human beings. There is, it is true, a suggestion that repair of fire damage does not constitute construction of a *building*; but in the court's opinion a structure complete from foundation to roof within its own exterior bounds does not cease to be a building because it is on one side contiguous with and connected to an earlier structure.

"This case therefore raises in principle a substantial and important question of public law—namely, whether all industrial and commercial buildings outside cities are or are not required to be made earthquake resistant and to have building permits.

"The term *occupancy* has been defined in various connections under the law of California. Its original and best established interpretation has been to indicate the actual possession of land, and effective dominion over it, in connection with controversies arising from possessory rights, such as government land entries, adverse possessions, etc.

(*Lawrence* v. *Fulton*, 19 Cal. 683; *McKenzie* v. *Brandon*, 71 Cal. 209 [12 P. 428]; *Crocker* v. *Dougherty*, 139 Cal. 521 [73 P. 429]; *Hart* v. *All Persons*, 26 Cal.App. 664 [148 P. 236].) This use of the term obviously does not in principle require habitation on the premises, nor has it been required in fact. (*McKenzie* v. *Brandon, supra.*) The term *occupancy* has likewise been held to mean habitation, or residential use. (*Mauck* v. *Northwestern Nat. Ins. Co.*, 102 Cal.App. 510 [283 P. 338]; *Wall Estate Co.* v. *Standard Box Co.*, 20 Cal.App. 311 [128 P. 1020].) Each of these cases, however, bases its interpretation upon a context, of a contract and of a statute respectively, referring expressly to dwellings.

"These different interpretations suggest that the quoted word, like other words in statutes, is colored by its context, and the general purpose of the enactment. ■■■ 'As words do not always mean the same thing, they should not be considered separately or abstractly, but the context should be consulted for the purpose of ascertaining the precise meaning intended or the particular purpose for which a doubtful word or phrase was employed.' (23 Cal.Jur. 748.)

"Counsel argue and the Court agrees that the word *occupancy* as used in the Riley Act has never been construed by any Court of appellate jurisdiction at any time. This ordinary and preferred source of authoritative legal interpretation is therefore not here available.

"Opinion Number 3 NS - 3637 of the Attorney General of California, dated July 10, 1941, expressly holds that *occupancy* as used in the Riley Act means use and not habitation. ■■■ " 'Although the opinions of the Attorneys General are not of controlling authority, yet in view of their relation to the general government and the nature of their duties, they are to be regarded as having a quasi-judicial character and entitled to great respect.' (*People* v. *Shearer*, 30 Cal. 645 at 652.)

.   .   .   .   .   .   .   .   .   .   .   .   .

■■■ "A further approved source of legal interpretation is contemporary administrative construction. 'Although not necessarily controlling, as where made without the authority of or repugnant to statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous and unauthorized.' (*Coca-Cola*

*Co.* v. *State Board of Equalization,* 25 Cal.2d 918 at 921 [156 P.2d 1].)

"The foregoing rule applies fully to administrative construction by officials of local governmental units. (*City of Los Angeles* v. *Rancho Homes, Inc.,* 40 Cal.2d 764 at 770 [256 P.2d 305].)

"In the endeavor to ascertain contemporary administrative construction of the Riley Act, this court directed that inquiry be made of various counties other than Shasta, as to their practice in enforcing the Act. Relator submits replies from 36 counties and defendants submit replies from 10. These replies were admitted into evidence by stipulation. Unfortunately, relator's inquiry was very easily susceptible of misinterpretation, and was obviously misinterpreted in Calaveras and Placer Counties, and probably in various other counties. Defendants' inquiry, though diffuse, seems to have elicited clearer answers. Moreover, many counties operate under local ordinances displacing the Riley Act from effective operation, and were therefore not equipped to be helpful.

"Cross-checking critically all data received, the Court is convinced that, under the Riley Act, *occupancy* has meant *use* in Butte, Calaveras, Modoc, Monterey, Placer, Sacramento, San Benito, San Diego, Santa Barbara, Santa Cruz and Yolo Counties; and habitation in Mendocino, Sierra, Siskiyou and Tehama Counties. Other counties remain in doubt. . . .

"The language of other portions of the present Act is susceptible of differing opinions reasonably arguable. In the court's opinion, section 19100b of the Health and Safety Code (prescribing a residential exception outside city limits), section 19132.3 (prescribing fees on a graduated scale) and section 19132.9 (dispensing with fees for public buildings including schools) suggest that section 19100a was not intended to exclude from regulation everything outside city limits except multiple dwelling units. It would have been easy for the legislators to have used 'dwelling' in subdivision (a) if that is what they meant; it is impossible to conceive of constructing a multiple dwelling for less than $50; it is unlikely that a public school would be building a multiple dwelling.

■ "The Riley Act was intended to preserve human life against earthquake damage. (Stats. 1933, ch. 601, § 8.) It was therefore enacted for the public safety. ■ The recent Tehachapi, Bakersfield and Eureka earthquakes (which are matters of public notoriety, and a proper subject of judicial notice) suggest that all parts of the state are exposed to the

hazard of earthquakes. Common sense suggests that commercial and industrial buildings are, in the general case, more likely to require earthquake protection than even multiple dwellings, in that they can bring together larger groups of persons in one place, and are likely to be less divided up by interior partitions. ■ The statutory purpose of protection against earthquakes is therefore better served by an interpretation of *occupancy* as meaning use rather than habitation. This purpose prevails over abstract dictionary definitions. (*Levitt* v. *Faber*, 20 Cal.App.2d Supp. 758 [64 P.2d 498].)

"It is not in the public interest that workmen at their labors, tradesmen at their counters, or members of the general public going about to do business should be exposed to the hazard of collapsing buildings in any part of the state for want of compliance with the very elemental requirements of the Riley Act.

"No particular difficulty or injustice arises from applying the Riley Act even to small commercial buildings, inasmuch as the stress resistances vary with the size of the building, and the permit fees with its cost, as set forth in sections 19150 and 19132.3 of the Health and Safety Code.

'We therefore hold and decree that the planing mill of defendant corporation is a building intended for human occupancy."

Appellant relies strongly on the contention that the word "primarily" as used in section 19100, subdivision (a), is most significant and that by its use it clearly exempts from the requirements of the Riley Act a planing mill which is constructed primarily for the manufacturing and surfacing of lumber and the sheltering of machinery and not primarily for occupancy by human beings. Appellant's argument as to this contention is persuasive but unconvincing. ■ The word "primarily" has been defined to mean "chiefly" or "principally."

We believe that it is in this sense that the word is used in subdivision (a). It is our view that the section applies to buildings intended to be used chiefly or principally for occupancy or use by humans as distinguished from buildings intended to be used chiefly for some other purpose but where humans will enter and be in the buildings but only incidental to the main purpose for which the buildings are erected. ■ We believe that planing mills, canneries, stores, and manufacturing plants are subject to the provisions of the act.

If the carrying out of the purpose for which the building is constructed requires the presence of workers or customers in the building then we believe that it is not the type of building that the Legislature intended to exempt from the requirement of the Riley Act.

It is of course true that the purpose for which appellant's planing mill was constructed requires the presence of workers within the structure, and bearing in mind that the chief object of the Riley Act was to have buildings "so constructed that the lives and property of the people will be safeguarded," we are convinced that the planing mill of appellant cannot be held to be "a building not intended primarily for occupancy by human beings."

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 13, 1957.