[Civ. No. 11448. Third Dist. Mar. 15, 1967.]

LEE MAINS, Plaintiff and Respondent, v. BOARD OF BARBER EXAMINERS, Defendant and Appellant.

460

Thomas C. Lynch, Attorney General, E. G. Funke, Assistant
Attorney General, Hubert O. Bower and Theodore T. N.

Slocum, Deputy Attorneys General, for Defendant and Appellant.

Carl Kuchman for Plaintiff and Respondent.

PIERCE, P. J.—This is the third in a series of controversies involving the Board of Barber Examiners and the present or former owner of a barbershop at the corner of 20th and L Streets (2001 L - 1129 20th) in Sacramento. (See *Doyle* v. *Board of Barber Examiners,* 219 Cal.App.2d 504 [33 Cal. Rptr. 349]; *Doyle* v. *Board of Barber Examiners,* 244 Cal. App.2d 521 [53 Cal.Rptr. 420].)

The appeal is by the board from a peremptory writ of mandate granted Lee Mains by the Superior Court of Sacramento County commanding said board to annul its decision suspending his barbershop certificate. Mains is the present operator of the shop.

The license suspension was based upon an accusation of the board that on five different occasions Mains, who is not a licensed barber, "on the premises of the aforesaid barber shop . . . *did cut the hair of a male patron therein.*" (Italics supplied.) That was alleged to be an unlawful act of Mains in practicing *barbering.*

The court, however, found that Mains neither "engaged in the practice of barbering or attempted to practice barbering," although he had "cut hair of a male patron in a barber shop." The court further found that "at all times . . . petitioner was a duly qualified . . . cosmetologist." (That fact is conceded.) The court's ultimate finding of fact was that the acts of Mains did not violate "any of the provisions of Chapter 6, Division 3, of the *Business and Professions Code,* the laws governing the practice of barbering in California." Actually, as the evidence reviewed hereinafter will disclose, Mains is a specialist, the only one in the barbershop mentioned who performs razor haircutting (although he sometimes also uses shears) for both male and female customers. The males are mostly members of the younger generation with a penchant for long tresses. The trial court did not find Main's practices to be illegal. A majority of this court agrees.

The controversy centers upon an interpretation of Business and Professions Code section 6522.[1] This section was added in 1939 (Stats. 1939, ch. 35, § 1, p. 364) and has not been

[1]Section 6522 provides: "The provisions of this chapter do not apply to:

"(a) Persons authorized by the law of this State to practice medicine

amended since. It was derived from the original Barbers Act (Stats. 1927, ch. 853, § 4, p. 1749, and the wording is closely similar thereto). Neither the present section nor the original act defines ''Persons practicing beauty culture.'' The original Cosmetology Act (Stats. 1927, ch. 845, p. 1711) did not define the term either. Section 2(b) of the latter act did include, within the definition of cosmetology, the following: '' '[C]osmetology' shall be construed to include any branch or any combination of branches of the occupation of a hairdresser and cosmetician, and any branch or any combination of branches of the occupation of a cosmetician, or cosmetologist, *or beauty culturist,* which are now or may hereafter be practiced.'' (Italics supplied.) That provision was excised from the act as readopted in 1939. In the latter act, however, there is included as a part of the definition of cosmetology: ''beautifying or otherwise treating by any means the hair of any persons.'' Haircutting by cosmetologists is also expressly included and permitted (§ 7321, subd. (a); Stats. 1939, ch. 38, § 1, p. 399, as amended Stats. 1941, ch. 340, § 3, p. 1581.)

The board argues that we must construe the words ''persons practicing beauty culture'' in section 6522 as meaning ''persons licensed to practice cosmetology.'' If we do concede such synonymity then we must limit its meaning to construe the section as though it said: ''The provisions of this chapter [i.e., the chapter covering the trade of barbering] do not apply to:'' persons licensed to practice that phase of cosmetology which constitutes ''beauty culture.'' Such persons may cut the hair but not ''shave or trim the beard.'' We are prepared to accept that interpretation.

Mains, as a person licensed to practice cosmetology, is also licensed to practice ''beauty culture'' as a branch thereof. So far as the jurisdiction of the Board of Barber Examiners is concerned, it is obvious, therefore, that if substantial evidence establishes that he merely cuts hair in the practice of ''beauty

and surgery or osteopathy or chiropractic or persons holding a drugless practitioner certificate under the laws of this State.

''(b) Commissioned medical or surgical officers of United States army, navy or marine hospital service.

''(c) Registered nurses.

''(d) *Persons practicing beauty culture.*

''*However, the provisions of this section do not authorize any of the persons exempted to shave or trim the beard, or cut the hair of any person for cosmetic purposes except that persons included in subdivision (d) may cut the hair.*'' (Italics supplied.)

All section references in this opinion are to the Business and Professions Code.

culture," then under the express provisions of section 6522 it had no power to punish him and the judgment so declaring must be affirmed.

First it is to be noted that *the cutting of hair was the* only act of what the board terms "barbering" covered by the accusation. Mains was not accused of shaving or trimming the beard; nor was he accused of doing any of the many other acts included within the statutory definition of barbering (§ 6520)[2] which most conventionally hirsuted males are familiar with by experience or observance during their twice-monthly, or oftener, visits to barbershops. Therefore, it would seem that once it has been established that Mains had a license to cut hair and did nothing else the prosecution should have terminated.

"Cosmetology" is defined by section 7321. This section is in the Cosmetology Act (§ 7300 et seq.) and is not a part of the Barbers Act at all. Cosmetologists are within the jurisdiction of a Board of Cosmetology (§ 7301 et seq.). ▮ Included within the definition of cosmetology are many acts which are also included within the practice of barbering. The two practices overlap (cf. § 7321 and § 6520). The cutting of hair is one of these overlapping processes.

We turn now to the acts shown to have been performed by Mains. It was stipulated that Mains did on the occasions alleged cut the hair of male patrons in the barbershop at 2001 L. Street. Mains was the only witness. His testimony included the facts: That for many years (since 1937) he had been a licensed master barber but did not have a license as such at the times here involved. Although he operated as a licensed cosmetologist, his practice was restricted to the cutting of hair. He had given up other cosmetological practices because of an allergy to the solutions used in giving permanent waves. He testified that he did not practice barbering. There was some equivocation in his characterization of the word "barbering" but our reading of the transcript has convinced us, as it

---

[2]Section 6520 provides: "The practice of barbering embraces any of or any combination of the following practices for hire or reward.

"(a) Shaving or trimming the beard or cutting the hair.

"(b) Giving facial and scalp massages or treatments with oils, creams, lotions or other preparations either by hand or mechanical appliances.

"(c) Singeing, shampooing, arranging, dressing, curling, waving or dyeing the hair or applying hair tonics, but waving does not include permanent waving.

"(d) Applying cosmetic preparations, antiseptics, powders, oils, clays or lotions to scalp, face or neck."

did the trial court, that when Mains admitted to the performance of "barbering" practices his admission was limited to the fact that he cut hair. He denied repeatedly that he had acted as a barber in any other respect. Three of the agents of the board were present during the hearing. Apparently the accusation had been based upon their reports to the board. Not once was Mains asked if he had cut *their* hair. *Singularly none of them was called as a witness.* As stated Mains was the only witness at the hearing. If Mains had ever performed any act except to cut hair, neither the hearing officer nor court was so informed. The board was apparently satisfied it had made a case when it was shown that Mains had "cut the hair of a male person." To return to Main's testimony, he stated: ". . . I don't shave or anything like that. . . . I'm not being a barber. To be a barber you got to do everything. I don't do nothing but cut hair." He also testified: "Q. And when you give these haircuts, do you also give a shave trim? A. I don't shave at all. Q. You don't use a razor at all to trim up the hair after? A. I use outliners on the neck. And sometimes with the outliners, there will be some hair up in here that you can't get with the outliners, and I have taken a razor and knocked it off dry. . . . Q. Do you use a straight razor? A. No. I use a new type of razor. It looks like a straight razor but it has a guard on it."

His customers included males, females and children. Regarding his patronage, he stated: "Well, in the younger generation they wear their hair real long. Some of them look like women, and you cut it with the razor. They only want razor cuts. You know, the outside, they only want razor cuts on the hair, and it's quite a bit different than it was years ago. . . . Q. Does anyone in that shop besides yourself, do razor cutting? A. No. Q. Is anyone in your shop able to do razor cutting besides you? A. No, they wont even try it. Q. *Do you have a customer trade that comes to you for razor cutting?* A. Yes." (Italics supplied.) He did admit, however, that he sometimes used shears as well as a razor in cutting hair.

█ This was evidence from which the trial court properly could determine that Mains did not practice barbering as the word is defined in section 6520; that his practices were limited to haircutting, that he was the shop's specialist in razor cutting, and that he did not shave or trim the beard or perform the other services of a barber.

The board in its accusation and in the questions asked of Mains at the hearing stresses the fact that Mains was cutting

the hair "of male persons." Since a cosmetologist is authorized to cut hair, one gets the impression that it is the cutting of the hair *of a male person* by a cosmetologist which offends the board. ■ But there is nothing in either the Barbers Act or the Cosmetology Act referring to males or females. There is no segregation of the sexes. Neither is there any law which prohibits males from having their hair razor cut. Moreover, if the male members of the younger generation want to wear their hair like women and have a beauty culturist style their elongated locks, we of an older generation may exercise an age-old prerogative to grumble at their habits, but so far as the majority of this court is concerned, we can find no cause to deny them the right. The real question involved is whether a male seeking such hair styling (or practice of beauty culture, if you prefer) by a cosmetologist must suffer the embarrassment of going to a cosmetology shop patronized predominantly by women or whether he may select a barbershop in which a licensed cosmetologist caters to male customers with a taste for feminine tresses.

The board says the latter is forbidden. It reaches that conclusion because section 7330 provides that "A cosmetologist is any person who engages in the practice of cosmetology in a licensed cosmetological establishment" (with exceptions not here material). ■ There are several answers to that proposition: (1) That section does not expressly prohibit a cosmetologist from practicing in a barber shop, and section 6522 expressly authorizes a licensed beauty-culturist-cosmetologist to operate in a barbershop when, as here, cosmetological practices are limited to haircutting and the operator eschews shaving and beard trimming. ■ (2) Enforcement of section 7330, which is a part of the Cosmetology Act, is an exclusive function of the Board of Cosmetology. If, therefore, *contrary to this holding,* it is a violation of the Cosmetology Act for a cosmetologist to do what Mains is doing, the Board of Barber Examiners has no jurisdiction to discipline him. ■ (3) Finally, the construction of either act to forbid a cosmetologist to work in a barbershop (so long as his practices are limited to the acts mentioned) would be unconstitutional. ■ Regulation of business operations (such as both the practicing of barbering and cosmetology and the places in, and conditions under, which barbers and cosmetologists shall operate) may be justified only when such regulation comes properly within the police power. (*Galyon* v. *Municipal Court,* 229 Cal.App.2d 667, 669 [40 Cal.Rptr. 446].)

 The basis of the barber licensing law is essentially a public health regulation. (See *Doyle* v. *Board of Barber Examiners, supra,* 244 Cal.App.2d 521, 526, and cases there cited.) The same may be said of the Cosmetology Act. In the *Doyle* case we held that a requirement of physical separation of two areas used for barbering only could have no discernible constitutional purpose. No different considerations have been suggested or occur to us to restrict a cosmetologist from practicing in a barbershop so long as he keeps within his trade. Both the Cosmetology Act and the Barbers Act demand the same standards of sanitation. Neither makes any provision for the segregation of the sexes and no such segregation appears to us to be constitutionally warranted. Regulation to protect the public against incompetence is justified but here there is neither accusation nor proof that Mains was not both qualified and licensed to do that which was done.

There is a further reason for sustaining the interpretation pursued by the trial court. As a result of its conclusion that petitioner Mains, a cosmetologist, was violating the law by administering hair cuts in a barbershop, the Board of Barber Examiners suspended the shop's license for 730 days, with 550 days of that period stayed upon certain probationary conditions. The order of the Board of Barber Examiners would thus put the shop out of business for approximately six months over a disputable question of statutory interpretation. The licensing law is here applied as a penal statute. A penal statute should not be interpreted to cover an alleged offense which is not plainly within its terms. (*DeMille* v. *American Federation of Radio Artists,* 31 Cal.2d 139, 156 [187 P.2d 769, 175 A.L.R. 382].) Under these circumstances the interpretation adopted by the trial court is to be preferred over that advanced by the Board of Barber Examiners.

The judgment is affirmed.

Friedman, J., concurred.

REGAN, J.—I dissent.

Petitioner is a licensed cosmetologist who also holds a barbershop certificate, which certificate licenses him to operate a barbershop. He is not a licensed barber and thus may not personally engage in the practice of barbering. Petitioner operates a barbershop, employing licensed barbers, under the name of "Doyle's Barber Shop," which shop is not a licensed cosmetological establishment.

Section 7330 of the Business and Professions Code defines a cosmetologist as "any person who engages in the practice of cosmetology *in a licensed cosmetological establishment . . . .*" (Italics added.) Petitioner testified: "I can't work in the cosmetology anymore because I'm allergic to the solutions, and my hands break out, and I can't work at it anymore." He further testified that his activities in the barbershop are limited to "working as a haircutter," cutting the hair of men, women and children.

I interpret section 6522 of the Business and Professions Code to authorize a licensed cosmetologist (person practicing beauty culture) to cut the hair when the hair cutting is incident to the practice of cosmetology. It does not authorize one not licensed as a barber to engage in the practice of barbering. I find that petitioner was licensed to cut hair in a licensed cosmetological establishment and, acting as such, was outside the jurisdiction of the Board of Barber Examiners. However, when he chose to perform as he did outside a licensed cosmetological establishment he was no longer clothed with the protection of his license. The Board of Barber Examiners, which is authorized to regulate barbershops and barbering, is empowered to discipline for violations of the Barber Act. (Bus. & Prof. Code, § 6596.) The actions of petitioner constitute such a violation.

The result of the majority decision in this case is not in the public interest. It will sanction the practice of haircutting in licensed barbershops by cosmetologists who are not trained for this purpose.

I would reverse the judgment.

A petition for a rehearing was denied April 12, 1967. Regan, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied May 31, 1967. Traynor, C. J., Burke, J., and Sullivan, J., were of the opinion that the petition should be granted.