[Civ. No. 33194. Second Dist., Div. Four. Aug. 26, 1969.]

SHERMAN BONE, Plaintiff and Appellant, v. STATE BOARD OF COSMETOLOGY et al., Defendants and Respondents.

852

Irving Reifman for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Kenneth Scholtz, Deputy Attorney General, for Defendants and Respondents.

FILES, P. J.—This is an appeal from a judgment dismissing plaintiff's complaint for an injunction against the State Board of Barber Examiners and the State Board of Cosmetology. The trial court sustained defendants' demurrer without leave to amend, upon the ground that the complaint failed to state a cause of action.

The sole issue is the constitutionality of Business and Professions Code section 6522, as amended in 1967, which provides that a cosmetologist's license does not authorize the holder to cut hair in an establishment which is primarily engaged in haircutting—i.e.—a barbershop.

Plaintiff is a licensed cosmetologist. He operates two cosmetological establishments under the business name of "Sherman's Shapers" which specialize in the styling and

cutting of men's hair. He alleges that the defendants have threatened to enforce section 6522 against him "civilly, administratively and criminally," and will thereby force him to discontinue his business unless defendants are enjoined by the court. Although he does not allege the fact, the parties and the trial court appear to have assumed that plaintiff is not a licensed barber, and his business establishments are not managed by a licensed barber.

Enforcement of the statute would make it impossible for plaintiff to continue to operate a business which is essentially a barbershop, using only licensed cosmetologists instead of licensed barbers.

California has long maintained separate licensing systems for cosmetology and for barbering. Each is administered by its own professional board, under its own statute.[1] Business and Professions Code section 6520 defines the practice of barbering[2] and section 7321 defines the practice of cosmetology.[3]

Except under certain exclusions and exceptions provided

---

[1]Barber Law, Business and Professions Code section 6500 et seq. Cosmetology Act, Business and Professions Code section 7300 et seq.

[2]Business and Professions Code section 6520: "The practice of barbering embraces any of or any combination of the following practices for hire or reward.

(a) Shaving or trimming the beard or cutting the hair.

(b) Giving facial and scalp massages or treatments with oils, creams, lotions or other preparations either by hand or mechanical appliances.

(c) Singeing, shampooing, arranging, dressing, curling, waving or dyeing the hair or applying hair tonics, but waving does not include permanent waving.

(d) Applying cosmetic preparations, antiseptics, powders, oils, clays or lotions to scalp, face or neck."

[3]Business and Professions Code section 7321: "The art of cosmetology includes any and all and any combination of the following practices:

(a) Arranging, dressing, curling, waving, machineless permanent waving, permanent waving, cleansing, cutting, singeing, bleaching, tinting, coloring, straightening, dyeing, brushing, beautifying or otherwise treating by any means the hair of any person.

(b) Massaging, cleaning or stimulating the scalp, face, neck, arms, bust or upper part of the human body, by means of the hands, devices, apparatus or appliances, with or without the use of cosmetic preparations, antiseptics, tonics, lotions or creams.

(c) Beautifying the face, neck, arms, bust or upper part of the human body, by use of cosmetic preparations, antiseptics, tonics, lotions or creams.

(d) Removing superfluous hair from the body of any person by the use of electrolysis or by the use of depilatories or by the use of tweezers, chemicals, preparations or by the use of devices or appliances of any kind or description, except by the use of light waves, commonly known as rays.

(e) Cutting, trimming, polishing, tinting, coloring, cleansing or manicuring the nails of any person.

in the statute, it is a misdemeanor to practice barbering or cosmetology without a license to do so.[4]

The two licensing boards have prescribed quite different courses of instruction and training as a qualification for licensing.[5] Cosmetologists are trained in several subjects not required of barbers. Student barbers are required to perform 550 operations of haircutting and shaping, as opposed to 75 operations required of cosmetology students.

The statutes recognize that there is some overlapping between the two vocations. Section 7324, in the Cosmetology Act, exempts, among others, "Barbers, insofar as their usual and ordinary vocation and profession is concerned" when engaged in certain enumerated practices. The Attorney General has ruled that this exception does not authorize a licensed barber to practice his profession in a cosmetological establishment. (39 Ops.Cal.Atty.Gen. 66 (1962).)

Section 6522, in the barbering law, read as follows prior to the 1967 amendment: "The provisions of this chapter do not apply to: (a) Persons authorized by the law of this State to practice medicine and surgery or osteopathy or chiropractic or persons holding a drugless practitioner certificate under the laws of this State. (b) Commissioned medical or surgical officers of United States army, navy or marine hospital service. (c) Registered nurses. (d) Persons practicing beauty culture.

"However, the provisions of this section do not authorize any of the persons exempted to shave or trim the beard, or cut the hair of any person for cosmetic purposes except that persons included in subdivision (d) may cut the hair."

That section was the subject of comment and judicial interpretation in *Mains* v. *Board of Barber Examiners* (1967) 249 Cal.App.2d 459 [57 Cal.Rptr. 573]. Mains was not a registered barber, but held a certificate (under Bus. & Prof. Code, § 6549) authorizing him to conduct a barbershop. He was a licensed cosmetologist, and he engaged in cutting hair in his shop. The board suspended the barbershop certificate upon the ground that an unlicensed barber was cutting hair therein. It was the board's position that although the phrase "Persons

(f) Massaging, cleansing, treating or beautifying the hands of any person."

[4]Barbering: Business and Professions Code section 6523. Cosmetology: Business and Professions Code section 7320.

[5]See title 16, California Administrative Code sections 217 (barbering) and 916 (cosmetology).

practicing beauty culture" in section 6522 meant "persons licensed to practice cosmetology," the exception granted by section 6522 did not apply to a cosmetologist who was cutting hair in a barbershop. The majority of the appellate court disagreed, holding that "section 6522 expressly authorizes a licensed beauty-culturist-cosmetologist to operate in a barbershop. . . ." (249 Cal.App.2d at p. 465.)

Justice Regan dissented. He said (at p. 467) : "I interpret section 6522 of the Business and Professions Code to authorize a licensed cosmetologist (person practicing beauty culture) to cut the hair when the hair cutting is incident to the practice of cosmetology. It does not authorize one not licensed as a barber to engage in the practice of barbering. . . .

"The result of the majority decision in this case is not in the public interest. It will sanction the practice of haircutting in licensed barbershops by cosmetologists who are not trained for this purpose."

This decision came down on March 15, 1967, while the Legislature was in session. Before that session ended, the Legislature amended the latter portion of section 6522 to read as follows : ". . . (d) Persons *licensed to practice cosmetology.*

"However, the provisions of this section do not authorize any of the persons exempted to shave or trim the beard, or cut the hair of any person for cosmetic purposes except that persons included in subdivision (d) may cut the hair *when the haircut is performed in a licensed cosmetology establishment which does not represent itself to the public as being primarily engaged in the business of haircutting, or which is not primarily engaged in the business of haircutting.*" (Italics added to the new language.)

The 1967 amendment was a clear legislative repudiation of the *Mains* interpretation. The legislative intent is no longer open to question. Plaintiff's argument is that the present form of the statute is unconstitutional in that (1) it is an arbitrary exercise of the police power; (2) it discriminates against plaintiff and denies equal protection of the laws; and (3) the statute is vague and indefinite.

We first refer to the standards by which a court reviews a legislature's exercise of the police power :

In *Williamson* v. *Lee Optical of Okla.* (1955) 348 U.S. 483

[99 L.Ed. 563, 75 S.Ct. 461], the Supreme Court, speaking of an Oklahoma statute regulating and limiting the practice of optometry, said, at pp. 487-488 [99 L.Ed. at pp. 571-572]: "The Oklahoma law may exact a needless, wasteful requirement in many cases. But it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement. . . . But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

"The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."

In *Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342], our Supreme Court pointed out: ". . . the determination of the necessity and form of such regulations, as is true with all exercises of the police power, is primarily a legislative and not a judicial function, and is to be tested in the courts not by what the judges individually or collectively may think of the wisdom or necessity of a particular regulation, but solely by the answer to the question is there any reasonable basis in fact to support the legislative determination of the regulation's wisdom and necessity?"

The acts of the California Legislature reflect its determination that the vocations of barbering and cosmetology shall remain separate and distinct. Cosmetologists are trained in and entitled to practice in a wider field of activity than barbers, but some cutting of hair is an appropriate and permissible activity in the practice of cosmetology. Barbers practice in a narrower field, where the cutting of hair is a primary activity. The instruction and training of barbers and cosmetologists has been prescribed with such a distinction in view. It has been suggested that the principal objective of this licensing system is public health, and that the standardization of competence is only a by-product or "ancillary to the primary purpose." (See *Doyle* v. *Board of Barber Examiners* (1963) 219 Cal.App.2d 504, 508 [33 Cal.Rptr. 349].) But whether the standards of competence are primary or second-

ary, it is beyond question that the statutory scheme provides for such standards, and we cannot say this is unreasonable. It is thus not unreasonable for the Legislature to say that, although cosmetologists may cut hair in the course of their broader practice of cosmetology, an establishment which is engaged primarily in the business of haircutting shall use those who are trained and registered as barbers.

Plaintiff calls attention to a sentence in the *Mains* opinion, *supra,* where the majority said "Finally, the construction of either act to forbid a cosmetologist to work in a barbershop (so long as his practices are limited to the acts mentioned) would be unconstitutional." (249 Cal.App.2d at p. 465.)

That statement went beyond the issues of the case, where the decision rested upon an interpretation of the then existing statute. We cannot regard it as an authoritative interdiction of a legislative policy not yet enacted. Now that the Legislature has spoken directly on the point, it is entitled to have its enactment judged in the light of the reasons which are now being advanced in its support.

Plaintiff's argument that section 6522 is arbitrary is based upon his assumption that it is solely a regulation of competition. This argument fails where it appears that the Legislature could reasonably have concluded that the amendment would help to maintain standards of competence in the public interest.

The statute is discriminatory only in the sense that any licensing system discriminates by making specified activity lawful only for those persons who qualify for and obtain a license. There being a reasonable basis for the limitation, no invidious denial of "equal protection" is involved.

Plaintiff's contention that the statute is vague rests upon the supposed difficulty of determining which establishments are "primarily engaged in the business of haircutting." His argument poses the familiar problem of classifying the borderline cases. We note, however, that plaintiff suffers from no uncertainty as to his own classification for, by his own statement, his shops "specialize in styling and cutting the hair."

The fact that borderline cases will arise is not enough to make a statute unconstitutionally vague. Courts have found

themselves capable of interpreting and applying the word "primarily" as used in other statutes. (See *Malat* v. *Riddell* (1966) 383 U.S. 569, 572 [16 L.Ed.2d 102, 104, 86 S.Ct. 1030], construing a federal revenue act; *People* v. *Berry* (1956) 147 Cal.App.2d 33 [304 P.2d 818], construing a building safety law. See also *United States* v. *Harriss* (1954) 347 U.S. 612 [98 L.Ed. 989, 74 S.Ct. 808], rejecting the contention that the word "principally" made a penal statute unconstitutionally vague.) The institution of the barbershop is so well understood in our society that we cannot say the public does not understand what is referred to in the 1967 amendment to section 6522.

The judgment is affirmed.

Jefferson, J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 22, 1969.