LAUFENBERG, Petitioner-Appellant, v. COSMETOLOGY EXAMINING BOARD OF WISCONSIN DEPARTMENT OF REGULATION & LICENSING, Respondent. [Case No. 76–191.]†

MORRILL, Petitioner-Appellant, v. BARBER'S EXAMINING BOARD OF WISCONSIN DEPARTMENT OF REGULATION & LICENSING, Respondent. [Case No. 76–192.]†

Supreme Court

*Nos. 76–191, 76–192. Argued October 2, 1979.—*
*Decided January 30, 1979.*
(Also reported in 274 N.W.2d 618.)

† Motion for reconsideration denied, without costs, on May 1, 1979.

176

For the appellants there was a brief by *Donald S. Eisenberg* and *Eisenberg, Giesen & Ewers*, and oral argument by *John Louderman*, all of Madison.

For the respondents the cause was argued by *John J. Glinski*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general, and *John W. Calhoun*, assistant attorney general.

CONNOR T. HANSEN, J.   In both cases the parties filed stipulations of facts with their respective licensing boards. The result was that no hearing was held and no testimony or evidence was otherwise presented. Review on appeal is thus limited to the facts set forth in the stipulations.

In the proceeding before the Cosmetology Examining Board, Laufenberg and the board entered into the following stipulation of facts:

1.  That Patricia A. Laufenberg at all times pertinent hereto is duly licensed as a cosmetologist under ch. 159 of the Wisconsin statutes.

2.  That from November 29, 1974, to the present (April 28, 1975), Patricia A. Laufenberg has been employed as a cosmetologist at a business establishment known as the Captain's Chair Barber Shop, 199 Cottage Grove Road, Madison, Wisconsin, which establishment has been approved as a barber shop under ch. 158, Wisconsin statutes.

3.  That the Captain's Chair Barber Shop is not licensed as a beauty salon under ch. 159.

4.  That the manager of the Captain's Chair Barber Shop, William Morrill, is a licensed master barber under ch. 158 and further that he is a licensed cosmetologist under ch. 159.

5.  That William Morrill at all times pertinent hereto is not licensed as a managing cosmetologist.

Based upon this stipulation, the Cosmetology Board found that Laufenberg practiced cosmetology and thus operated a "beauty salon" as defined by sec. 159.01(3), Stats., on a premise not licensed as a beauty salon under ch. 159 and in violation of sec. 159.09(1); that she was practicing cosmetology outside of a licensed beauty salon in violation of the provisions of sec. H11.04, Wisconsin Administrative Code; and that she practiced cosmetology while not under the supervision and direction of a manager licensed pursuant to ch. 159, in violation of sec. 159.12(2).

In the proceeding before the Barber's Examining Board, Morrill and the board entered into the following stipulation of facts:

1. That William Morrill at all times pertinent hereto was duly licensed as a master barber who in addition thereto holds a shop manager's license under sec. 158.12, Stats., for the premises located at 199 Cottage Grove Road, Madison, Wisconsin.

2. That William Morrill does not hold a manager's license as a practicing cosmetologist under sec. 159.08 (2), Stats.,[1] nor is the barber shop licensed as a beauty salon under sec. 159.09.

3. That William Morrill has permitted the employment of a licensed cosmetologist, Patricia Laufenberg, to cut hair of male patrons at the barber shop from October 29, 1974, until the present (April 28, 1975), even though said Patricia Laufenberg is not licensed as a barber as defined in sec. 158.04, Stats.

4. William Morrill at all times pertinent hereto was duly licensed as a cosmetologist under ch. 159, Wisconsin Statutes.

Based upon these stipulated facts the Barber's Examining Board found that Morrill was duly licensed as a master barber; that he held a barber shop manager's li-

---

[1] Misquoted in the stipulation as sec. 158.08(2), Stats.

cense issued pursuant to sec. 158.12, Stats.; that he was not licensed as a managing cosmetologist pursuant to ch. 159; that his barber shop was not licensed as a beauty salon pursuant to sec. 159.09; that he employed Laufenberg, a licensed cosmetologist, at his barber shop; that he permitted her to cut hair at his barber shop; that Laufenberg did not hold a master barber's license or an apprentice permit card issued pursuant to ch. 158.

Considering the facts presented to the respective boards by the stipulations, their findings were inescapable.

On appeal the petitioners, Laufenberg and Morrill, raise the following issues:

1. Whether sec. 159.09(1), Stats., and Wisconsin Administrative Code H11.04 (now C1.08(1)), which limit the practice of cosmetology to licensed beauty salons, are unreasonable regulations violative of the due process and equal protection clauses of the state or federal constitutions?

2. Whether sec. 159.12(2), Stats., which requires that a licensed cosmetologist practice only under the supervision of a licensed managing cosmetologist, is an unreasonable regulation violative of the due process and equal protection clauses?[2]

3. Whether sec. 158.04(2), Stats., which prohibits a barber shop manager from employing a person who is not a licensed barber to cut hair, is an unreasonable regulation violative of the due process and equal protection clauses?

4. Whether the three-year barber apprenticeship required by sec. 158.09, Stats., as a condition for a jour-

[2] Although not material to the issues presented, in a separate proceeding before the board, Laufenberg qualified as a licensed managing cosmetologist. A person does not hold two licenses, one as a licensed cosmetologist and a second one as a licensed managing cosmetologist.

neyman's barber's license and sec. 158.10 are unreasonable regulations violative of the due process and equal protection clauses?

In a ch. 227, Wisconsin Statutes, review case, this court is to review the judgment of the circuit court. The only issue is whether the circuit court erred in that review. Sec. 227.21, Stats.; *Clintonville Transfer Line v. Public Service Comm.,* 248 Wis. 59, 76, 77, 21 N.W.2d 5 (1945).

". . . If the trial court applied correct principles of law and accorded the findings of the commission the weight to which they were entitled under the statute, the determination of the trial court must be upheld unless it is clearly wrong. This court determines questions of law for itself." *Wisconsin Telephone Co. v. Public Service Comm.,* 232 Wis. 274, 321, 287 N.W. 122 (1939).

A question of law, therefore, is reviewable by both the circuit court and the Supreme Court. *Pabst v. Department of Taxation,* 19 Wis.2d 313, 324, 120 N.W.2d 77 (1963).

Statutes are presumed to be constitutional. To overcome this presumption a challenger must bear the heavy burden of proving that no basis exists for the classification made by the legislature. *State ex rel. Real Est. Exam. Bd. v. Gerhardt,* 39 Wis.2d 701, 711, 159 N.W.2d 622 (1968).

The petitioners here must prove the statute is unconstitutional beyond a reasonable doubt. We will not weigh the relative merits of the legislation. Courts are not concerned with the overall merits or wisdom of legislative enactments, but become judicially concerned where it has been shown that a statute "clearly contravenes some constitutional provision." *Chicago & N. W. R. Co. v. La Follette,* 27 Wis.2d 505, 521, 522, 135 N.W.2d 269 (1965).

The licensing and regulation of occupations is within the police power of the state.

". . . '. . . in the exercise of its police power to require licenses, a state may make any reasonable classification which it deems necessary to the police purpose intended to be attained by the legislation. . . .' . . . '. . . the legislature may,' without denial of equal protection of the laws, classify businesses and occupations for purposes of regulation, provide different rules for different classes, limit a regulation to a particular kind of business, extend to some persons privileges denied to others, or impose restrictions on some but not on others, where the classification or discrimination is based on real differences in the subject matter and where the classification or the discrimination is reasonable, and the legislation affects alike all persons pursuing the same business under the same conditions.' . . .

"The discretion of the legislature in making these classifications is great. The court is not required under the law to find a proper basis of classification, but the classification made by the legislature is presumed to be valid unless the court can say no state of facts can reasonably be conceived that would sustain it." *Gerhardt, supra,* at 709, 710.

In *Gerhardt, supra,* at 710, 711, we repeated these five well-established standards for proper classification:

" '(1) All classifications must be based upon substantial distinctions which make one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only. It must not be so constituted as to preclude addition to the numbers included within a class.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.' "

". . . A classification in police power means will be sustained if there is a reasonable and practical ground for the classification, even though some other classification might appear to be more in accord with general welfare. If the classification is reasonable and practical in relation to the objective, that is sufficient and doubts must be resolved in favor of the reasonableness of the classification. . . ." *State v. Jackman,* 60 Wis.2d 700, 705, 706, 211 N.W.2d 480 (1973).

". . . There is too much of a temptation to a putting of a judicial thumb on the scales with judges substituting their own evaluation of alternatives for that of the legislature. We would hold that, once within the area of proper exercise of police power, it is for the legislature to determine what regulations, restraints or prohibitions are reasonably required to protect the public safety and only the abrogation of a basic and substantial individual liberty would justify judicial intervention. . . ." *Bisenius v. Karns,* 42 Wis.2d 42, 54, 165 N.W.2d 377 (1969).

Subject to the foregoing generalizations as to the standard of review, we consider the issues raised on appeal.

### CONSTITUTIONALITY OF SECTIONS 158.04(2), 159.09(1) AND 159.12(2), STATUTES

The petitioners contend that the statutes they are charged with violating are unreasonable because the occupations of barbering and cosmetology are similar.

There are two difficulties with this assertion, both relating to the fact that there is nothing in the record to support it. When the Laufenberg case was before the Cosmetology Examining Board all the evidence before it for consideration was the stipulation which essentially said that she was "employed as a cosmetologist" in a barber shop that was not licensed as a beauty salon under ch. 159, Stats. The second difficulty is that there is nothing in the record to support the argument that the

two professions are sufficiently similar so as to make the statutory provisions unreasonable. The stipulation Morrill presented to the Barber's Examining Board was somewhat different. This stipulation stated that he did not hold a manager's license as a practicing cosmetologist under sec. 159.08(2), and that he had "permitted the employment" of Laufenberg, a licensed cosmetologist, but not a licensed barber, to cut the hair of male patrons.

The petitioners then argue that since many men and women prefer to have their hair cut and groomed in a somewhat similar fashion that it is unreasonable to prohibit a licensed cosmetologist from moving into a barber shop to cut men's hair. This argument is advanced with absolutely no evidence in the record to sustain it.

It seems fairly obvious that occupational licensing and regulatory procedures are based upon a legislative determination that public health, safety and consumer protection from incompetent practitioners is necessary. Such occupational licensing and regulation is a proper exercise of the police power of the state. *Watchmaking Examining Bd. v. Husar,* 49 Wis.2d 526, 533, 182 N.W.2d 257 (1971). The legislature has here determined that the professions of barbers and cosmetologists are professions which should be subject to licensing and regulatory procedures and has established separate boards to govern each of the professions. The petitioners claim the two professions are so similar that it is unreasonable to prohibit a cosmetologist from practicing her profession in a barber shop. The legislative enactments are presumed to be constitutional and to overcome this presumption the petitioners must prove they are unreasonable beyond a reasonable doubt. Here no hearings were held and no testimony or evidence offered other than the two brief stipulations filed with the respective

boards. The petitioners have not met the significant burden of proof required to support a holding that legislative enactments are unconstitutional.

". . . The burden on the challegner is heavy. All legislative acts are constitutional unless it appears they are unconstitutional, beyond a reasonable doubt. . . ." *Chicago & N. W. R. Co. v. La Follette, supra,* at 521, 522.

The petitioners also argue that the training requirements of the two professions are so similar that no rational basis exists for requiring cosmetologists to practice only under the supervision of a licensed cosmetology manager. Again we are confronted with the fact that there is no evidence of record to support this assertion. Therefore our consideration of the issue is restricted to an examination of the statutes and the Wisconsin Administrative Code.[3] Without attempting to delineate the differences between the training of barbers and cosmetologists, an examination of the curriculum reflects that there are differences and that different emphasis is placed upon different areas of training.

The petitioners also contend that there is no rational basis for requiring licensed cosmetology operators to practice only under supervision and direction of a licensed manager. However, a reading of the statutes reflects that there is a rational basis for this requirement. Sec. 159.08(2), Stats., sets forth the requirements for obtaining a manager's license. This statute requires that a manager's license be issued only to one who has practiced cosmetology 4,000 hours in a period of at least two years under an operator's license in this state and pass a managing cosmetologist's examination. It is obvious that the requirements for obtaining a manager's license are considerably greater than the requirements

[3] Secs. 158.01 and 158.03, Stats.; secs. 159.01 and 159.02; Wisconsin Administrative Code H7.04 and C2.13.

for obtaining an operator's license. A proper exercise of the state's police power includes insuring that cosmetology is practiced only by competent operators. The requirement that an operator not practice cosmetology unless under the supervision and direction of a licensed manager is reasonably related to achieving this goal.[4]

The petitioners have failed to provide proof which would support a holding that these statutory enactments are arbitrary and unreasonable and therefore unconstitutional.

### CONSTITUTIONALITY OF SECTIONS 158.09 AND 158.10, STATUTES

The petitioners also asked this court to consider the constitutionality of the three-year barber apprentice requirement as provided in secs. 158.09 and 158.10, Stats. Laufenberg contends that the barber apprentice requirements discriminate against her by requiring her to complete a three-year apprenticeship before she can become a licensed barber even though her cosmetology license authorizes her to cut hair in a licensed beauty salon. She challenges the three-year barber apprentice requirement for a licensed cosmetologist who wishes to secure a barber's license.

This issue was not raised before the agency or in the circuit court and was not considered by either tribunal. There is no evidence that Laufenberg attempted to take the barber's examination or attempted to secure a barber's

---

[4] We have considered authorities from other jurisdictions. They are informative, but because of the state of the record in this case, they are not particularly helpful. These authorities include: *Mains v. Bd. of Barber Examiners*, 249 Cal. App.2d 459, 57 Cal. Rptr. 573 (1967); *Bone v. State Bd. of Cosmetology*, 275 Cal. App. 2d 851, 80 Cal. Rptr. 164 (1969); *Jeffs v. Board of Examiners of Barbers*, 320 Mich. 78, 30 N.W.2d 445 (1948); *Panico v. Robinson*, 23 Ill. App.3d 848, 320 N.E.2d 101 (1974); *Green v. Shama*, 217 N.W.2d 547 (Iowa Sup. Ct., 1974).

license. Again on this issue, the petitioners have not provided any factual foundation on which to base a holding that the apprenticeship requirement is unreasonable. Furthermore, the issue is not directly presented in this case and the first constitutional challenge to the requirements of sec. 158.09 and 158.10, Stats., is made in petitioner's brief on appeal.

Consideration of a constitutional issue raised for the first time on appeal is discretionary with this court. *Binder v. Madison,* 72 Wis.2d 613, 621, 241 N.W.2d 613 (1976). The court will consider such an issue if it is in the interests of justice to do so, if both parties have had an opportunity to brief the issue and if there are no factual issues that need resolution. *State v. Weidner,* 47 Wis.2d 321, 326, 177 N.W.2d 69 (1970).

Further, it would be contrary to sound judicial policy for this court to consider the constitutionality of a statute which is "not brought directly in issue by the facts presented in the case at bar." *Schmidt v. Local Affairs & Development Dept.,* 39 Wis.2d 46, 61, 158 N.W.2d 306 (1968).

Because of the state of this record and the manner in which the issue is raised, we conclude this is not an appropriate case in which to consider the constitutionality of secs. 158.09 and 158.10, Stats., as they relate to the barber apprentice requirement.

Finally, petitioners challenge the order of the Cosmetology Board contending that it is fatally defective for revoking the managing cosmetologist's license of Laufenberg when the findings state she held an operating cosmetologist's license.

The respondents explain that Laufenberg became eligible for a managing cosmetologist's license between the

time of the violation on which the board's findings of fact were based and the time of the decision of the board. The board therefore revoked the only license she had at the time of its order. We deem it entirely proper for the board to take judicial notice of its own records.

*By the Court.*—Judgment affirmed.

DAY, J. *(dissenting)* I dissent. The training of the two occupations of barber and cosmetologist have become so similar that there is no longer any justification for prohibiting a licensed cosmetologist from operating under a master barber in a barber shop or for prohibiting a journeyman barber from operating under a managing cosmetologist in a beauty shop.

The attorney general in the oral argument of this case on behalf of the two examining boards admitted that a woman can go into a barber shop run by a master barber and get all of the services such as scalp treatment, hair styling, permanents, cutting, dyeing and a variety of other services that she could get in a beauty salon run by a managing cosmetologist. Likewise, a man can go into a beauty salon and get a plain haircut or a hair styling and all of the other types of hair and scalp treatment described above that he could get in a barber shop. The most cursory examination of the hair styles of present day men and women shows that frequently, particularly among younger people, the styles are strikingly similar.

It was conceded that the purpose of the required training is to insure competence in the cutting, trimming, styling, shampooing, and general treatment of the hair. Both barbers and cosmetologists are permitted to perform these services for either sex under licenses granted to each by the state through their respective boards. The training is conceded to be almost identical. The difference in the two is accidental rather than by design. The only difference of materiality is that cosmetologists are

not trained to shave beards and hence not permitted to give shaves and barbers are not trained to give manicures and are prohibited from doing such. But shaves and manicures are not involved in this case before us.

The majority opinion says the factual record is not sufficient to allow a judgment that the law as applied in denying Patricia Laufenberg the right to make a living as a cosmetologist is unconstitutional. I disagree. We can take judicial notice of the absolute similarity in the training of the two occupations since the curricula is a matter of public record.

The right to choose and pursue a lawful occupation is one of the liberties protected by the fourteenth amendment and is a property right within the due process clause. 16 Am. Jur.2d, *Constitutional Law,* sec. 371 (1964). *State v. Withrow,* 228 Wis. 404, 407, 230 N.W. 364 (1938).

It was conceded that the health and safety of barber shop patrons is not threatened when a licensed cosmetologist cuts their hair. It is interesting that the inspection of both types of establishments is carried on jointly by the boards using the same inspectors.

The court below and the state on appeal relies on the theory that there is another purpose and that is to insure competency. But the fact is that there is no competency problem in allowing a cosmetologist to cut the hair of male customers in a beauty salon. The attorney general has considered this issue on two occasions. In 60 Op. Atty. Gen. 376 (October 15, 1976) the attorney general said that a proposed statute which would prevent men from going to cosmetologists would violate the equal protection clause. Similarly, in 50 Op. Atty. Gen. 169 (October 9, 1961), the attorney general concluded that the statutory terms did not prohibit a cosmetologist from cutting mens' hair in a beauty salon. Courts have generally held that statutes restricting cosmetologists to cutting the hair of women and forbidding them from cutting men's hair are unconstitutional. *Bolton v. Texas*

*Board of Barber Examiners,* 350 F. Supp. 494 (N.D. Tex.), aff'd 409 U.S. 807, 93 S. Ct. 52, 34 L. Ed.2d 68 (1972) ; *Pavone v. Louisiana State Board of Barber Examiners,* 505 F.2d 1022 (5th Cir. 1974) ; *Tuozzoli v. Killian,* 386 F. Supp. 9 (D. Conn. 1974) ; *People v. Taylor,* 540 Pac.2d 320 (Colo. 1975) ; *Maryland State Board of Examiners v. Kuhn,* 270 Md. 496, 312 Atl.2d 216 (1973) ; *People v. McDonald,* 67 Mich. App. 64, 240 N.W.2d 268 (1976) ; *Minnesota Board of Barber Examiners v. Laurance,* 300 Minn. 203, 218 N.W.2d 692 (1974) ; *New York State Hairdressers & Cosmetologists Assn. Inc. v. Cuomo,* 83 Misc.2d 154, 369 N.Y.S.2d 965 (1975) ; *Leetham v. McGinn,* 524 Pac.2d 323 (Utah 1974).

Only the Iowa Supreme Court held that because of physiological differences in the skin and hair of men and women it is reasonable to restrict a cosmetologist's practice to women customers. *Green v. Shama,* 217 N.W.2d 547 (Iowa, 1974). The Iowa statute was subsequently changed by the legislature to permit cosmetologists to cut men's hair. Iowa Code, sec. 157.1.

The trial court in the case before us held that "the requirement that an operator may not practice cosmetology unless under the supervision and direction of a licensed manager [managing cosmetologist] is reasonably related to the goal of competence. . ." But the differences in training are minimal. The only substantial difference is that barbers are trained in shaving and cosmetologists are trained in manicuring. Barbers are expected to perform 500 haircuts and stylings while cosmetologists must have forty-five hours of practical class instruction in cutting and one hundred hours in styling and must complete one hundred cutting assignments and two hundred styling assignments. The trial court noted, erroneously, that cosmetologists were not required to perform a prescribed number of each procedure. The cosmetology curriculum requires fewer assignments than

the barbers curriculum in every area except shampooing and waving. Yet cosmetology training requires approximately the same number of hours. The circuit court noted that cosmetology training was 1,500 hours and barber training was 1,248 hours. However, this observation failed to consider the additional 288 hours of school instruction that barber apprentices must fulfill over and above the hours spent in barber college. Sec. 158.09(1)(c), Stats.

What differences there are in the curriculum of the barbers and cosmetologists must not, by force of logic, be important. If they are, then barbers should be restricted to cutting men's hair and cosmetologists should be restricted to cutting women's hair.

The fact is that both cosmetologists and barbers are allowed to cut the hair of either sex. If a master barber can "supervise" a journeyman barber in his shop in the cutting of men's hair, there is no reason demonstrated in the record before us why that same master barber cannot "supervise" a licensed cosmetologist to cut men's hair. It is especially true in this case where shortly after this action was started, Patricia Laufenberg was granted a license as a managing cosmetologist allowing her to supervise other cosmetologists in the cutting of either men's or women's hair.

The only justification for any of these regulations is the protection of the public and that protection is to insure competence on the part of the operator and safety and sanitation in the surroundings in which the services are performed. Nothing in the stipulation before us in any way impugns the competency of Patricia Laufenberg to cut men's hair, which is what she was doing in the barber shop managed by William Morrill.

It must be emphasized that neither the Cosmetology Board nor the trial court stated that Patricia Laufenberg was not competent to cut hair in the barber shop.

It is also interesting that the only procedure that Patricia Laufenberg was trained to perform which Mr. Morrill had not been trained in was manicuring, yet manicuring may be performed in barber shops without supervision. Sec. 159.08(7)(m), Stats.

The Barber's Board charged Mr. Morrill with hiring a person who was not licensed as a barber to practice barbering. However, the statement of stipulated facts said that Patricia Laufenberg was "cutting hair." There is no charge that he was permitting her to perform a procedure, such as shaving, for which she had not been trained.

The trial court also found that the Cosmetology statutes were a reasonable method to insure that cosmetology inspectors would be able to find cosmetologists in order to inspect their work and their work place. First of all, cosmetology inspectors must cope with the fact that manicurists, who are licensed cosmetologists, are practicing in barber shops. Second, the inspection of both beauty salons and barber shops is carried on jointly by the boards using the same inspectors, and so all places of business are inspected to insure health, safety and competency. Nothing in this record indicates that the health, safety or welfare of the public have been in any way threatened or jeopardized by the actions of either William Morrill or Patricia Laufenberg.

I conclude that the statutes challenged here are arbitrary and unreasonable in their application to the present fact situation. The application of the statutes to both petitioners is unrelated to the statutory purpose of protecting the public health, safety and welfare. The statutes as applied unnecessarily and unreasonably infringe on both petitioners' right to pursue occupations for which they are trained, and thus violate due process.

I would reverse the judgment of the circuit court.

It is obvious that what occurred here was merely a challenge to test the law.

In the interests of justice, even under the majority opinion, this case should be returned to the cosmetology board for reconsideration of the length of Patricia Laufenberg's suspension. The disparity in punishment between Morrill and Laufenberg, (his suspension is for ninety days; hers for one year) and the severity of her punishment is a clear abuse of discretion on the part of the Cosmetology Examining Board.

I am authorized to state that Mr. Justice CALLOW joins in this dissent.