**Angelo Joseph PAVONE et al.**

v.

**LOUISIANA STATE BOARD OF BARBER EXAMINERS and Louisiana State Board of Cosmetology.**

Civ. A. No. 72-2915.

United States District Court,
E. D. Louisiana.

Oct. 10, 1973.

Joseph N. Marcal, III, Marcal & O'Brien, New Orleans, La., for plaintiffs and intervenors.

C. Paul Barker, Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, La., for La. State Bd. of Barber Examiners and State of La.

William J. Rein, III, New Orleans, La., for La. State Bd. of Cosmetology.

HEEBE, Chief Judge:

Plaintiffs in this class action have moved for summary judgment of their suit to enjoin the operation of Louisiana statutes which prohibit cosmetologists, who are allowed to cut hair on females to a limited extent, from otherwise engaging ". . . in the practice of hair cutting, unless such cosmetologist is licensed by the barber board." There are two classes of plaintiffs represented in the suit: 1) all persons licensed by the Cosmetology Board and not by the Barber Board; and 2) all male persons who wish to have their hair cut by a licensed cosmetologist instead of a barber.

The Louisiana barbering statute provides that with four exceptions, only barbers are authorized by law to cut hair. Three of the exceptions are for medical personnel; the fourth is for "Persons authorized by law to practice cosmetic therapy or beauty culture." L.S.A.–R.S. 37:350(4); *see also*, L.S.A.–R.S. 37:348–37:351. This exception is further defined by the statutory provision challenged in this case, L.S.A.–R.S. 37:492(2).

"§ 492. Definitions . . .

(2) 'Cosmetologist,' 'cosmetician,' 'beautician,' 'hairdresser' or 'operator' means any person who, with hands or with mechanical or electrical apparatus or appliances or by use of cosmetic preparations, antiseptics, soaps, detergents, tonics, lotions or creams engages, for compensation, direct or indirect, including tips, in any one or any combination of the following practices: namely, massaging, cleansing, washing, stimulating, manipulating, exercising, beautifying or doing similar work upon the scalp or the face, neck, arms, bust or upper body of any person. This definition shall include the practice of arranging, hair dressing, singeing or shaping, curling, waving, cleansing, shampooing, styling, bleaching, coloring or similar work upon the hair of another person. *Persons engaged in the practice of cosmetology are authorized to clip and cut hair on females to the extent necessary in giving permanent waves and in shaping hair to the extent necessary to style or arrange, but persons engaged in the practice of cosmetology are not authorized to otherwise engage in the practice of hair cutting, unless such cosmetologist is licensed by the barber board.* This definition shall not include that process of removing surplus hair by the process known as electrolysis and shall not be construed to apply to any person who performs any of the services herein enumerated for any member of his immediate household, nor to any licensed barber engaged in the exercise of his profession in compliance with R.S. 37:341–397, nor to employees of hospitals, nursing homes and other health care facilities engaged in the

exercise of his profession in compliance with R.S. 37:500. Acts 1972, No. 133, § 1. (challenged provision emphasized)

Plaintiff cosmetologists claim that they are being denied both due process and equal protection of the laws by the provision which limits their hair cutting activities to incidental cutting of women's hair. Plaintiff-intervenor males argue that they are being denied equal protection in that they are not allowed to have their hair cut or styled at a licensed cosmetologist's shop simply because of their sex. In addition, both classes of plaintiffs argue that the statutory restriction in question is an arbitrary, hence unconstitutional, exercise of the police power.

It makes little difference whether this particular statute is analyzed in equal protection terms or examined in light of the constitutional standards circumscribing the exercise of the police power. Either way, the statute must meet certain standards of rationality in order to pass constitutional muster. The Supreme Court noted in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L. Ed.2d 225 (1971), that the equal protection clause denies "to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Reed, supra,* at 76, 92 S.Ct. at 253. Similarly, a proper exercise of the police power "must be for an end which is in fact public and *the means adopted must be reasonably adapted to that end.*" (emphasis added) State of Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938), *and* Treigle v. Acme Homestead Assoc., 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575 (1936), quoted in Lee Optical of Oklahoma v. Williamson, 120 F.Supp. 128

(W.D.Okl.1954). The statutes regulating the exercise of the barbering and hairdressing professions are valid uses of the police power insofar as they further the public *health* and *safety*. In respect to the practice of these trades, "the public welfare and comfort—outside of, and beyond what is included in its health and safety—are so insignificant as not to lend color to any right claimed under the police power of the state." Timmons v. Morris, 271 F. 721, 724 (W.D.Wash.1921); *see,* Bd. of Barber Examiners of La. v. Parker, 190 La. 214, 182 So. 485 (1938). In short, under both the police power and equal protection standards, the state may, at the very most, enact only those provisions and classifications which are rationally related to the legitimate purpose of the statute in question—in this case to the protection of the public health and safety.

In accordance with the undisputed facts of the case at bar, the Court can find no rational justification related in any way to the public health or safety which might sustain that portion of L.S.A.–R.S. 37:492 which restricts the haircutting activities of licensed cosmetologists. It is agreed that there is no relevant difference between the hair of males and females. Cosmetologists receive health and safety training comparable to that received by barbers. Any distinction between hair "cutting" and "cutting and clipping to the extent necessary for permanent waves, etc.," is illusory at best and, in any event, has no relationship to the public health or safety. Of course, the arbitrary denial of plaintiff-cosmetologists' right to pursue their occupation deprives them of both due process of law and the equal protection of the laws. Likewise, the exclusion of male customers from licensed cosmetology shops, since it is without a reasonable basis, works an invidious discrimination in violation of the Fourteenth Amendment.

Defendants have argued repeatedly that a decision in favor of the plaintiffs in this case would necessarily

unravel the entire state scheme of regulation of the barbering and beauty trades. This is patently not so. All this decision means is that the public practice of haircutting may be performed, pursuant to L.S.A.–R.S. 37:350, only by licensed barbers, certain medical personnel and licensed cosmetologists. Apart from the provisions discussed in this opinion, the system of regulation of these professions remains undisturbed. Accordingly,

It is the order of the Court that plaintiffs' motion for summary judgment, be, and the same is hereby, granted. Plaintiffs are instructed to submit an appropriate order.