JOSEPH PANICO, Plaintiff-Appellant, *v.* WILLIAM H. ROBINSON, Director, Department of Registration and Education, *et al.*, Defendants-Appellees.

(No. 58894;

First District (4th Division)—October 23, 1974.

Dominic P. Gentile, Patrick A. Tuite, and Irwin G. Jann, all of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellees.

Torshen, Fortes & Eiger, Ltd., of Chicago (Jerome H. Torshen, of counsel), for amicus curiae Chicago Cosmetologists Association.

Sherman Carmell, Sheldon M. Charone, and Stephen B. Horwitz, all of Chicago (Carmell & Charone, Ltd., of counsel), for amicus curiae Illinois State Barbers and Beauticians Association.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The plaintiff-appellant brought an action against the defendants seeking a declaratory judgment and permanent injunctive relief. The plaintiff alleged that he was a licensed cosmetologist and on June 1, 1972, had opened a business establishment at 6322 W. Cermak Road, Berwyn, Illinois, commonly referred to as "Panico the Haircutter" and/or "Panico Hair Trends." Plaintiff contended that he performed the services of styling and cutting the hair of male and female patrons and that he never performed any acts upon either male or female patrons which could be construed as shaving or clipping any body or facial hairs nor did he attempt to practice in any manner any business or occupation other than beauty culture. On August 24, 1972, plaintiff was served with an order of the defendant, William H. Robinson, in his official capacity

as Director of Illinois Department of Registration and Education, which directed plaintiff to cease and desist from rendering his services to males. Rule VIII, G 1 and 2, of the Rules and Regulations for the Administration of the Beauty Culture Act limits to women patrons the cutting and trimming services a cosmetologist can render.[1] Plaintiff maintains that this rule is repugnant to the United States Constitution and the Constitution of the State of Illinois and sought a permanent injunction against defendants, Robinson and Pechous, from enforcing Rule VIII, G 1 and 2. It should be noted that the plaintiff is not nor has he ever been licensed to practice barbering within the State of Illinois.

The plaintiff's complaint also alleged that on September 13, 1972, plaintiff was personally informed by the defendant, Donald Pechous, Chief of Registration, Inspection and Investigation, Illinois Department of Registration and Education, that the Department of Education was going to institute criminal proceedings against him pursuant to section 58(b)(1) of "An Act in relation to the practice of barbering   *   *   *" (Ill. Rev. Stat. 1971, ch. 16¾, par. 14.92(b)(1)). The statute states:

"(b) Each of the following constitutes a misdemeanor punishable upon conviction by a fine of not less than $25 nor more than $200 for the first offense, and for a second and subsequent offense, a fine of not less than $50 nor more than $500 and confinement in the county jail for not more than 6 months:

(1) The practice of barbering or an attempt to practice barbering without a valid and current certificate of registration as a registered barber." (Ill. Rev. Stat. 1971, ch. 16¾, par. 14.92(b)(1).)

The practice of barbering is defined as follows:

"Any one or any combination of the following practices constitutes the practice of barbering: To shave or trim the beard or cut the hair; to give facial and scalp massage or facial and scalp treatment with oils, creams or other preparations either by hand or by mechanical appliances; to singe or shampoo the hair or apply a hair tonic; or to dye or tint the hair of any person: Provided that any person registered under the provisions of 'An Act relating to the practice of beauty culture', approved June 30, 1925,

---

[1] The rule in pertinent part states as follows:

"Unprofessional conduct, which is specified as a ground for the revocation and suspension of a certificate of registration under Section 12(k) of the Illinois Beauty Culture Act, includes, but is not limited to the following:

1. Cutting or trimming hair, unless same is done in connection with arranging or dressing of women's hair.
2. Advertising haircutting or trimming of hair unless it is offered in connection with the dressing or arranging of women's hair."

as amended, shall be exempt from the provisions of this Act insofar as the practice of beauty culture under the provisions of said Act is authorized." (Ill. Rev. Stat. 1971, ch. 16¾, par. 14.39.)

A definition of the practice of beauty culture is contained in section 2 of "An Act relating to the practice of beauty culture" (Ill. Rev. Stat. 1971, ch. 16¾, par. 16):

"Any one or any combination of the following practices constitutes the practice of beauty culture when done for cosmetic or beautifying purposes and not for the treatment of disease or of muscular or nervous disorder.

The application of cosmetic preparations to the human body by massaging, stroking, kneading, slapping, tapping, stimulating, manipulating, exercising, cleansing, beautifying, or by means of devices, apparatus or appliances; arranging, dressing, marcelling, curling, waving, cleansing, singeing, bleaching, coloring, dyeing, tinting, or otherwise treating by any means the hair of any person. *However, the provisions of this Act shall not authorize any registered beauty culturist to cut or clip the hair of any person unless he has first obtained a certificate of registration as a barber* under the provisions of 'An Act to regulate the pursuit of the business, art and avocation of a barber, and to insure the better qualifications of persons following such business in the State of Illinois,' approved June 10, 1909, as amended." (Emphasis added.)

Plaintiff stated that he could not construe section 5 of the barbering act and section 2 of the beauty culture act (Ill. Rev. Stat. 1971, ch. 16¾, pars. 14.39 and 16) so as to determine the standard to which his conduct must comply and maintained that he was "on the horns of a dilemma in choosing his manner of practicing beauty culture." Plaintiff sought a construction of the statutory provisions.

On November 2, 1972, the plaintiff filed a motion for summary judgment and on November 28, 1972, the case came on for hearing and evidence was presented to the trial court. The plaintiff elected to stand on his pleadings and the defense presented two witnesses. We deem it unnecessary to recount all of the evidence in detail. However, it is important to note certain aspects of the plaintiff's testimony. Mr. Panico was called by the defense as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat., 1971, ch. 110, par. 60). Mr. Panico was asked the following question and gave the following response:

"Q. Now, at your present location do you cut hair for all people who come in?

A. Right. Well, I put restrictions on it. I am not qualified to,

you know, to give like a taper up the back of the head. I refer them to a barber shop in the area. My clients are women and men with long hair."

Mr. Panico was asked what he did different from a barber and he responded:

"I am cutting longer hair. I feel like I am qualified to cut the longer hair. The thing I am doing different than a barber— * * * The thing I am doing different than a barber is I don't do any shaving, any tapers; no crewcuts—nothing like that."

The plaintiff was also asked the following question and gave the following response:

"Q. But isn't it a fact that most of your haircutting is incidental to giving the styling of the hair?

A. The basic service in the shop is a haircutting shop. You know, they are styled haircuts."

Mr. Panico did testify that he does decline to cut the hair of a customer if the length of the hair is too short to satisfy his restrictions and in these instances he refers the customers to neighborhood barber shops. The proof was closed and the trial court stated it would make a ruling at a later date.

On January 18, 1973, the trial court filed a memorandum opinion and ruling on the plaintiff's motion for summary judgment. In rendering its decision the trial court specifically referred to the Illinois Supreme Court decision of *Banghart v. Walsh*, 339 Ill. 132, 171 N.E. 154 (1930), and stated that in *Banghart* the Illinois Supreme Court recognized the limited cutting of hair as a necessary part of a cosmetologist's occupation. The trial court stated:

"In construing the statute some forty years ago, the Illinois Supreme Court in *Banghart v. Walsh, supra,* declared that beauty culturists may cut hair where the service is merely incident to hair styling and arranging. Neither that case, nor the statute, give beauty culturists a license to cut hair generally. The legislature, in its wisdom, reserved hair cutting to a class of persons who must complete a more comprehensive study of anatomy, physiology, pharmacology, and the actual skills of cutting hair with shears, razors, thinning shears, clippers and comb, etc. The length of time spent in study, practice and supervision is longer than that required for cosmetology. The only evidence introduced on this issue demonstrated the need for these stricter requirements to protect the health and safety of the public. It is not for this Court to set aside the detailed course of study required by legislative enactment for hair cutting.

In order to perform the services of a beauty culturist, the plaintiff must meet the requirements of that statute. This he has done. In order to cut hair, the plaintiff must meet the further requirements of the barbering statute. This he has not done."

The trial court also stated:

"There has been no evidence presented to argue that the health and safety considerations implicit in the statute differ with the length of the hair being cut. Therefore, the plaintiff as a cosmetologist may not cut the hair of his customers, women or men. This occupation is statutorily within the competence of only those persons who meet the requirements for obtaining a barber's license."

The trial court also held that those services which a cosmetologist is licensed to perform may be performed upon both women and male patrons but that "these services do not include cutting hair whether such hair is 1-1/16 inches long or 6 inches long."

The trial court's order was filed on January 22, 1973, and held Rule VIII, G 1 and 2, of the Rules and Regulations for the Administration of the Beauty Culture Act unconstitutional insofar as it prohibits the cutting and trimming of a woman's hair incidental to styling and arranging the hair. In this respect the plaintiff's motion for summary judgment was granted. The trial court's order also stated that the Statute (Ill. Rev. Stat. 1971, ch. 16¾, par. 14.92) which prohibits the practice of barbering without a valid and current certificate of registration is constitutional and should be enforced without regard to the sex of the person upon whom barbering is performed. The order also stated that it is violative of sections 5 and 58 of the barbering act (Ill. Rev. Stat. 1971, ch. 16¾, pars. 14.39 and 14.92) for a cosmetologist to cut the hair of his patrons. In regards to these matters the plaintiff's motion for summary judgment was denied. The trial court's order also stated, "Insofar as this order is inconsistent with *Banghart v. Walsh*, 339 Ill. 132 (1930), the order is stayed since this court does not have the power to overrule or affect *Banghart v. Walsh*."

There apparently was some confusion on the part of the parties in interpreting the trial court's order and on February 1, 1973, the court filed a supplemental memorandum for the purpose of clarification. In this opinion the court reiterated its holding that Rule VIII, G 1 and 2, of the Rules and Regulations for the Administration of the Beauty Culture Act is unconstitutional "on the ground that the regulation discriminates between the sexes without regard to reasons of health or safety and, upon no other valid basis." The trial court once again referred to our supreme court's decision in *Banghart v. Walsh, supra*, and stated that

*Banghart* rewrote section 2 of the beauty culture act (Ill. Rev. Stat. 1971, ch. 16¾, par. 16), "by limiting the inhibitions of the last sentence of that section to prohibit the cutting or clipping of the hair of men only, rather than prohibiting the cutting or clipping of the hair 'of any person' as provided by the statute." The trial court went on to express its opinion that the *Banghart* decision was unconstitutional for the same reason that it had held Rule VIII, G 1 and 2, unconstitutional. However, the trial court recognized that it was without authority to overrule or affect our Supreme Court's decision in *Banghart*. The court stated, "Thus, by virtue of *Banghart*, the cosmetologists may cut and trim the hair of women incidental to the arranging and dressing of women's hair until the Supreme Court of this state or the legislature enunciates its decision reviewing this court's order of January 22, 1973; or the legislature enacts remedial legislation." The trial court concluded by stating that the plaintiff and other cosmetologists cannot cut or trim the hair of men without violating sections 5 and 58 of the barbering act (Ill. Rev. Stat. 1971, ch. 16¾, pars. 14.39 and 14.92) "because the regulation which this court held unconstitutional did no more than codify the decision in *Banghart v. Walsh* and leaves that decision as expressive of the law of this State until overruled by the Supreme Court of this State." The plaintiff has appealed from these rulings.

The plaintiff maintains that the trial court erred in declaring that cosmetologists are statutorily prohibited from cutting the hair of their patrons. Plaintiff contends that the Illinois Supreme Court in *Banghart v. Walsh, supra,* held that cosmetologists are competent and qualified to cut the hair of their patrons. It is the plaintiff's contention that the trial court did not clearly define what a cosmetologist's services can include and that the trial court overruled the decision in *Banghart* while giving lip service to recognizing that it was without authority to do so. Plaintiff contends that the operation that a beauty culturist can perform within the confines of the law is dependent on the type of hair style that the cosmetologist is creating and not the sex of the bearer of that hair style.[2] The defendants in response to the plaintiff's contentions maintain that our supreme court in *Banghart* held that a cosmetologist could only cut hair incidental to styling and arranging the hair and that the Illinois Supreme Court did not rule that cosmetologists could cut hair as a principal part of their trade. Defendants take the position based on the

---

[2] The plaintiff's brief contained arguments based on the constitutional grounds of equal protection and sex discrimination and bias. However, during oral argument plaintiff's counsel conceded that the case came before this court on narrower grounds and abandoned his constitutional arguments. We agree and therefore, it is unnecessary to go into these areas.

evidence presented to the trial court that the plaintiff was principally engaged in cutting hair and was not cutting and trimming hair incidental to styling and arranging the hair of his patrons. Defendants also maintain that the trades of a cosmetologist and a barber are separate and distinct and that a cosmetologist is not qualified to cut hair generally because he is not trained in said art. It is the contention of the defendants that the trial court did not err in ruling that cosmetologists may not cut their patrons' hair.

In this case two amici curiae sought leave of this court to submit briefs and present oral arguments and such leave was granted. The Chicago Cosmetologists Association, Inc., appeared in support of the plaintiff and the Illinois State Barbers' and Beauticians' Association entered the case on the defendants' side. The brief of the Chicago Cosmetologists Association is centered on the position that the administrative scheme sought to be enforced by the defendants in which cosmetologists are not permitted to cut or trim men's hair is constitutionally impermissible. The Illinois State Barbers' and Beauticians' Association characterizes the issue involved as whether section 2 of the beauty culture act (Ill. Rev. Stat. 1971, ch. 16¾, par. 16) which prohibits a beauty culturist from cutting the hair of any person unless he has a barber's license is a valid exercise of police power. The Barbers' and Beauticians' Association maintains that section 2 is a valid exercise of the police power and contend that the proviso[3] in section 2 is constitutionally permissible notwithstanding the Illinois Supreme Court decision in *Banghart v. Walsh, supra.*

We have perused the trial court's memorandum opinion and ruling and supplemental memorandum on the plaintiff's motion for summary judgment several times and conclude that it is not susceptible of a definitive interpretation. It is plausible to construe the trial court's memoranda as finding that a cosmetologist may cut and trim the hair of his patrons incidental to styling and arranging their hair but that a cosmetologist may not engage in the general practice of cutting hair. Support for this interpretation is found in the trial court's recognition of the Illinois Supreme Court's ruling in *Banghart* that beauty culturists may cut hair where the cutting or trimming is merely incidental to hair styling and arranging and the trial court's statement that "[n]either that case, nor the statute, give beauty culturists a license to cut hair generally." However, equally plausible is the interpretation that the trial

---

[3] The proviso in pertinent part states: "However, the provisions of this Act shall not authorize any registered beauty culturist to cut or clip the hair of any person unless he first obtained a certificate of registration as a barber  *  *  *." (Ill. Rev. Stat. 1971, ch. 16¾, par. 16.)

court held that a cosmetologist may not cut the hair of *any person*. This interpretation is supported by statements of the trial court in its original memorandum opinion and ruling and in the court's order. In its original memorandum the trial court stated, "Therefore, the plaintiff as a cosmetologist may not cut the hair of his customers, women or men. This occupation is statutorily within the competence of only those persons who meet the requirements for obtaining a barber's license." In referring to the services that a cosmetologist can legally render the court stated, "These services do not include cutting hair whether such hair is 1⅟₁₆ inches long or 6 inches long." The order of the trial court recited, "It is violative of Sections 14.39 and 14.92 of chapter 16¾ for a cosmetologist to cut the hair of his patrons." Despite this ambiguity in the memoranda and order of the trial court it is not necessary to belabor this point because the court stayed its order to the extent it was inconsistent with the Illinois Supreme Court decision in *Banghart v. Walsh, supra*. Therefore, the net effect and end result of the proceedings in the trial court is that cosmetologists are permitted to cut and trim the hair of their female patrons when such cutting and trimming is done incidental to styling and arranging their hair. However, a cosmetologist may not cut hair as a principal part of his trade, nor may he cut or trim the hair of his male patrons even when such cutting or trimming is merely incidental to styling and arranging the hair. This is true despite the fact that the trial court found Rule VIII, G 1 and 2, of the Rules and Regulations for the Administration of the Beauty Culture Act, which is merely a codification of the Illinois Supreme Court's decision in *Banghart*, unconstitutional. The trial court realized it was without power or authority to overrule or affect the decision in *Banghart*.

 ■■ There is no appeal or cross-appeal taken from the trial court's ruling that Rule VIII, G 1 and 2, of the Rules and Regulations for the Administration of the Beauty Culture Act is unconstitutional. We agree with the trial court's determination of unconstitutionality but would so find on a different ground.[4] The trial court correctly perceived that it

---

[4] The trial court's rationale for holding Rule VIII, G 1 and 2 unconstitutional was that it "discriminates between the sexes without regard to reasons of health or safety and, upon no other valid basis." The trial court, therefore, concluded that Rule VIII, G 1 and 2, was violative of the equal protection rights guaranteed by both the United States and Illinois Constitutions. As we perceive this case we do not agree that it is a case of sex discrimination. The party complaining, Mr. Panico, was not denied equality of rights based upon *his* sex. Cosmetologists, whether male or female, are prohibited by Rule VIII, G 1 and 2, from cutting the hair of their male patrons while being permitted to cut their women patrons' hair when such cutting is incidental to styling and arranging the hair. Barbers are statutorily permitted to cut the hair of both males and females. Therefore, Rule VIII, G 1 and 2, imposes a classification of haircutters and as the plaintiff maintained in the trial court the classification is imposed not on the haircutters ability to cut hair but on

was without the power and authority to overrule or affect the Illinois Supreme Court decision of *Banghart v. Walsh,* but the trial court's limitation of its holding was error to the extent that it felt compelled to hold, despite finding Rule VIII, G 1 and 2, unconstitutional, that cosmetologists can only cut and trim women's hair incidental to styling and arranging the hair. As we have previously stated, the Illinois Supreme Court in *Banghart v. Walsh, supra,* held that cosmetologists could cut and trim the hair of their women patrons incidental to styling and arranging their hair. The court stated at 133: "The shaving and trimming of beards is no part of the business or occupation of the beauty-shop operator or beauty culturist, but it is a necessary part of their work, incidental to arranging and dressing of women's hair to cut and trim the hair." The decision in *Banghart* was rendered in 1930 and the limitation of the court's holding to *women's* hair was merely reflective of the social climate that existed in 1930 and the social context in which the case was decided. This is evident from the court's statement at page 138: "The occupation of barber, as alleged in the bill and admitted by the answer, is made up principally of men and is practiced upon the persons of men, while the occupation of beauty-shop operator or beauty culturist is made up principally of women and is practiced on the persons of women." This is no longer true and we take judicial notice of the fact that the trades of barber and cosmetologist are practiced by both males and females and that members of either sex patronize both. We are, therefore, of the opinion that the trial court erred to the extent that it felt compelled to limit its holding that Rule VIII, G 1 and 2, was unconstitutional by virtue of the decision in *Banghart.* As we previously alluded to, the end result of the proceedings in the trial court was to reiterate the holding in *Banghart* that cosmetologists may cut and trim the hair of their women patrons incidental to styling and arranging their hair despite the trial court's finding that Rule VIII, G 1 and 2, is unconstitutional. Since we are of the opinion that the limitation of the decision in *Banghart* to

---

the sex of their customers. In determining the constitutionality of such classifications the test to be applied is whether a reasonable or rational relationship exists between the classification and a legitimate state interest. (*Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 172, 31 L.Ed.2d 768, 777, 92 S. Ct. 1400, 1405 (1972); *Morey v. Doud,* 354 U.S. 457, 463 to 464, 1 L.Ed.2d 1485, 1490, 77 S. Ct. 1344, 1349 (1957); *Edelen v. Hogsett,* 44 Ill.2d 215, 221, 254 N.E.2d 435, 439 (1969); *Latham. v. Board of Education,* 31 Ill.2d 178, 185, 201 N.E.2d 111, 115 (1964); *Village of Cahokia v. Wright,* 11 Ill.App.3d 124, 131, 296 N.E.2d 30, 34 to 35 (1973).) If the issue of the constitutionality of Rule VIII, G 1 and 2, were properly before this court we would, as did the trial court, find the rule unconstitutional but on the ground that no reasonable or rational relationship exists between the classification and a legitimate state interest. See, *Maryland State Board of Barber Examiners v. Kuhn,* 270 Md. 496, 312 A.2d 216 (1973); also see, *Pavone v. Louisiana State Board of Barber Examiners* (E.D. La.), 364 F. Supp. 961 (1973).

women was merely reflective of the social climate and context in which the decision was rendered, we find that it was unnecessary for the trial court to limit and stay its decision in this regard. Therefore, we are of the opinion that cosmetologists may cut and trim the hair of their male and female patrons when such cutting and trimming is performed *incidental to* styling and arranging their hair.

■■ This court is cognizant of the fact that it does not possess any greater authority or power than do the circuit courts in regards to overruling or affecting decisions of the Illinois Supreme Court. As was stated in *Agricultural Transportation Association v. Carpentier*, 2 Ill.2d 19, 27, 116 N.E.2d 863, 867 (1953):

> "Where the Supreme Court has declared the law on any point, it alone can overrule and modify its previous opinion, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases." (Citations omitted.)

The interpretation that we have given to the *Banghart* decision is not tantamount to overruling that decision. It cannot be refuted that the social climate and era of contemporary times is vastly different than existed at the time of the *Banghart* decision. In the case of *Daley v. Meier*, 33 Ill.App.2d 218, 178 N.E.2d 691 (1961), after the court recognized its duty to follow decisions of the Illinois Supreme Court it stated at page 223:

> "However, we believe this rule does not prevent our following the reasoning of the Supreme Court on a question and extending it to facts not previously presented to the Supreme Court for decision."

Similarly, our finding that cosmetologists may cut and trim the hair of both their male and female patrons when such cutting and trimming is done incidental to styling and arranging the hair merely follows the decision of *Banghart* and extends it to a factual situation not previously presented to our supreme court.

■■ As previously stated, plaintiff maintains that the Illinois Supreme Court in *Banghart v. Walsh, supra*, held that cosmetologists are competent and qualified to cut the hair of their patrons. We have thoroughly reviewed the *Banghart* decision and disagree with the plaintiff. The plaintiffs in *Banghart* brought suit to have declared unconstitutional section 18 of the barbers act as amended in 1929. The section defined the practice of barbering and contained a proviso stating, "that nothing contained in this act shall be construed to include so-called beauty shops or hairdressing parlors patronized by women, *except as to the cutting of*

*hair."* (Laws of 1929, p. 194.) (Emphasis added.) The court, in its opinion, also referred to section 2 of the beauty culture act of 1925 which after defining the practice of beauty culture stated that a cosmetologist was not authorized to cut the hair of *any person* without first obtaining a certificate of registration as a barber. (Ill. Rev. Stat. 1971, ch. 16¾, par. 16.) As we previously stated, that court in *Banghart* recognized that it is a necessary part of a cosmetologist's work incidental to arranging and styling a woman's hair to cut and trim the hair. The court stated at page 140:

> "The incidental part of the trade of beauty culture, consisting of cutting and trimming hair, is taken from that trade and given to the trade of barber under the guise of a police regulation, which can find no support *as a reasonable measure either to preserve the health or to secure the safety, welfare or comfort of society."*

The court held that section 18 of the barbers act violated both the constitutions of the United States and State of Illinois in that it deprived the plaintiffs of their liberty and property without due process of law. There is nothing in the *Banghart* decision to indicate that cosmetologists were found to be competent and qualified to cut hair generally. It was only cutting and trimming hair incidental to styling and arranging the hair that was found to be within the competency of beauty culturists.

We agree with defendant's contention that the plaintiff in the case at bar was principally engaged in cutting hair. This is evident from the plaintiff's own response to the question of whether most of his haircutting was incidental to styling hair. He responded, "The basic service in the shop is a haircutting shop. You know, they are styled haircuts." While we are of the opinion that a cosmetologist may cut and trim the hair of both his male and female patrons when such cutting and trimming is incidental to styling and arranging the hair, a cosmetologist cannot hold himself out to be a barber nor may he generally engage in the practice of cutting hair. To do so would be to violate sections 5 and 58 (b) (1) of the barbering act (Ill. Rev. Stat. 1971, ch. 16¾, pars. 14.39 and 14.92(b)(1)).

Plaintiff has cited several authorities in support of his position, but we find them to be unpersuasive. In the case of *Jeffs v. Board of Examiners,* 320 Mich. 78, 30 N.W.2d 445 (1948), the court cited with approval a statement of the trial court. It was stated at page 83:

> "On the other hand, when hair cutting as practiced on the individual or on customers in general, becomes the important or main feature of the process, and not the incident thereto, then the requirements of section 2(b)  *  *  *  [Comp. Laws Supp.

1940, § 8714—2, Stat. Ann. 1946 Cum. Supp. § 18.132] apply, and such operator must obtain a license in accordance with the afore-mentioned provision."

The statutory provision referred to prohibited a cosmetologist from cutting or clipping the hair of any person unless he first obtains a barber's license. *Jeffs* is not supportive of the plaintiff's position but is to the contrary. The plaintiff by his own admission was basically engaged in haircutting and as found in *Jeffs* this cannot be permitted without first obtaining a barber's license.

Amicus, Illinois State Barbers' and Beauticians' Association, maintains that section 2 of the beauty culture act (Ill. Rev. Stat. 1971, ch. 16¾, par. 16) is a valid exercise of the police power and that the proviso in section 2 which prohibits a cosmetologist from cutting the hair of any person is constitutionally permissible notwithstanding the Illinois Supreme Court decision in *Banghart v. Walsh, supra.* The Barbers' and Beauticians' Association stated in its brief:

"But today, *Banghart* is of no precedential value and as is seen from its reliance upon cases such as *Union Slaughter House Co. v. Crescent City Livestock Co.,* 111 U.S. 746 (1884) and *Allgeyer v. Louisiana,* 165 U.S. 578 (1897), *Banghart* represents a compendium of constitutional law of an 'era long ago passed into history.' *Dandridge v. Williams,* 397 U.S. 471, 485 (1970); *Lincoln Fed. L.U. v. Northwestern I. & M. Co.* 335 U.S. 525, 536 (1949)."

The Association contends that the proscription in section 2 is not violative of due process when tested against modern constitutional principles. If this were a case of first impression, we might tend to agree with the Association. (See *Lincoln Federal Labor Union v. Northwestern Iron and Metal Co.,* 335 U.S. 525, 93 L.Ed. 212, 69 S. Ct. 251 (1949); *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 99 L.Ed. 563, 75 S. Ct. 461 (1955); *Ferguson v. Skrupa,* 372 U.S. 726, 10 L.Ed.2d 93, 83 S. Ct. 1028 (1963); *contra, Allgeyer v. Louisiana,* 165 U.S. 578, 41 L.Ed. 832, 17 S. Ct. 427 (1897); *Lochner v. New York,* 198 U.S. 45, 49 L.Ed. 937, 25 S. Ct. 539 (1905).) However, this is not a case of first impression and as we previously alluded to, this court is duty bound to follow the Illinois Supreme Court's decision in *Banghart.* As the trial court correctly stated in its original memorandum op'nion and ruling the proviso in section 2 was diluted by the decision in *Banghart.* We are cognizant of the fact that the statutory provision under challenge in *Banghart* was the proviso to section 18 of the barbers' act as amended in 1929 while the statute at issue in the case at bar is section 2 of the beauty culture act (Ill. Rev. Stat. 1971, ch. 16¾, par. 16). However, the thrust of the proscriptions in both statutes is identical and the decision

of the Illinois Supreme Court in *Banghart* is equally applicable to the proviso in section 2.[5] An apparent conflict exists between the proscription in section 2 and the decision by our supreme court in *Banghart*. However, a resolution of this apparent conflict must necessarily come from action of the Illinois Supreme Court or the Illinois General Assembly and not this court. For this court to follow the avenue of approach outlined by amicus, Illinois State Barbers' and Beauticians' Association, would not be merely following the reasoning of our supreme court on a question and extending it to a factual situation not previously presented to the supreme court. It would amount to overruling the Illinois Supreme Court's decision in *Banghart* which is beyond the power and authority of this court.

■■ In order to avoid the confusion that arose in the trial court in regard to its findings we deem it appropriate to reiterate this court's findings. First, the trial court is reversed to the extent that it felt compelled by the Illinois Supreme Court's decision in *Banghart v. Walsh, supra*, to limit and stay its decision that Rule VIII, G 1 and 2, of the Rules and Regulations for the Administration of the Beauty Culture Act is unconstitutional. Therefore, *cosmetologists may cut and trim the hair of their male and female patrons when such cutting and trimming is performed incidental to* styling and arranging their hair. We affirm the trial court's finding that section 58 of the barbering act (Ill. Rev. Stat. 1971, ch. 16¾, par. 14.92) is constitutional and should be enforced without regard to the sex of the person upon whom barbering is performed. A cosmetologist, therefore, may not hold himself out to be a barber nor may he generally engage in the practice of cutting hair. As we previously stated, to do so would be a violation of sections 5 and 58(b)(1) of the barbering act (Ill. Rev. Stat. 1971, ch. 16¾, pars. 14.39 and 14.92(b)(1)).

The decision of the Circuit Court of Cook County is, therefore, reversed in part and affirmed in part.

Reversed in part and affirmed in part.

BURMAN and JOHNSON, JJ., concur.

---

[5] The Barbers' and Beauticians' Association recognized this in its brief when after referring to the two statutory provisions it stated: "If this were the only distinction between the cases, Amicus' task would, admittedly, be nearly insurmountable."