OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



April 20, 2000

The Honorable Bob Hunter
Chair, Committee on State, Federal
   and International Relations
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0211

Re: Distinction between "the hair" and "the beard" for purposes of the barber statute (RQ-0130-JC)

Dear Representative Hunter:

You have asked this office to distinguish between "the hair" and "the beard" for the purpose of the statutes regulating barbers and cosmetologists. As you explain the situation giving rise to your request, a barber who is one of your constituents, and who employs licensed cosmetologists in his shop, is concerned that the cosmetologists in his employ may be subject to discipline by the State Board of Barber Examiners (the "Board") should their trimming of sideburns, for example, be construed as trimming a beard in violation of what is now section 1601.002(1)(A) of the Occupations Code. You note that in Attorney General Opinion JM-990, this office stated that "[a] licensed cosmetologist has no statutory authority to shave and trim beards." Tex. Att'y Gen. Op. No. JM-990 (1988) at 5. However, as you further suggest, "no definition exists for 'hair' and 'the beard' in either the statutes or attorney general opinions." Letter from Honorable Bob Hunter, State Representative, to Honorable John Cornyn, Attorney General, at 1 (Oct. 11, 1999) (on file with Opinion Committee). Accordingly, you seek clarification of this distinction.

Pursuant to title 9 of the Occupations Code, licensed barbers and licensed cosmetologists may perform many of the same services on the hair of individuals. Each, for instance, may "treat[] a person's hair" in a variety of enumerated ways, provide certain preparatory or ancillary services for these treatments, or "cut[] the person's hair as a separate and independent service. . . ." See TEX. OCC. CODE ANN. §§ 1601.002(1)(B), 1602.002(1)(A-C) (Vernon 2000). However, under the code's definitions, the practice of barbering includes "treating a persons's mustache or beard by arranging, beautifying, coloring, processing, shaving, styling or trimming," id. § 1601.002(1)(A), while the practice of cosmetology does not. This office does not have the expertise to make the decision as to whether a particular act is being done to "hair" or "beard." Since the trimming of beards is entirely within the practice of barbering, such a decision is within the sole jurisdiction of the Board, which has authority to "regulate any area of the practice or teaching of barbering to implement the purposes and intent of" chapter 1601 of the Occupations Code, id. § 1601.151(d)(3), as well as the power to "define any term necessary to administer or enforce" chapter 1601, id. § 1601.151(e). In view of the possibility that, absent such a rule, cosmetologists may be uncertain in some cases how

to regulate their conduct so as to avoid possible sanction, the Board would be well-advised to make such a formal clarification. Otherwise, the possibility remains that the statute might be void for vagueness as applied in cases such as the one which occasioned your request. *See Texas Antiquities Comm. v. Dallas County Community College Dist.*, 554 S.W.2d 924, 928 (Tex. 1977) (statutory language must not be so broad and vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application," quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (U.S. 1926)).

Some historical review is necessary in order to explain the context in which your question is presented. Prior to the 1960s and 1970s, a rigid sexual segregation existed between barbers and cosmetologists or beauticians, and between barber shops and beauty parlors. By custom and sometimes by law, barbering was a profession in which men engaged and a service which men received; cosmetology was a profession in which women engaged and a service which women received. *See Banghart v. Walsh*, 171 N.E. 154, 156-57 (Ill. 1930). Both custom and law changed in this regard, as a relatively minor feature of the more libertarian temper of the times. The vogue of what were called "unisex" hair salons began, as men in particular sought different tonsorial styles than the familiar crewcut and "short back and sides." In a series of cases from the late 1960s through the 1970s, courts invalidated state statutes which had in effect given a monopoly on the cutting of men's hair to barbers. *See, e.g., Mains v. Board of Barber Exam'rs,* 57 Cal. Rptr. 573 (Cal. App.–3d Dist. 1967); *Bolton v. Texas Bd. of Barber Exam'rs*, 350 F. Supp. 494 (N.D. Tex. 1972), *aff'd*, 409 U.S. 807 (1972); *Pavone v. Louisiana State Bd. of Barber Exam'rs*, 364 F. Supp. 961 (E.D. La. 1973), *aff'd*, 505 F.2d 1022 (5th Cir. 1974); *Maryland State Bd. of Barber Exam'rs v. Kuhn*, 312 A.2d 216 (Md. App. 1973); *New York State Hairdressers & Cosmetologists Ass'n v. Cuomo*, 369 N.Y.S.2d 965 (N.Y. Sup. 1975); *People v. Taylor*, 540 P.2d 320 (Colo. 1975); *People v. McDonald*, 240 N.W.2d 268 (Mich. App. 1976); *but see, e.g., Bone v. State Bd. of Cosmetology*, 80 Cal. Rptr. 164 (Cal. App.–2d Dist. 1969); *Green v. Shama*, 217 N.W.2d 547 (Iowa 1974); *Panico v. Robinson*, 320 N.E.2d 101 (Ill. App.–1st Dist. 1974); *Laufenberg v. Cosmetology Examining Bd.*, 274 N.W.2d 618 (Wis. 1979).

For the purposes of this opinion, the most important of these opinions is *Bolton v. Texas Board of Barber Examiners*, in which a three-judge panel in the United States District Court held that those portions of the Texas statutes regulating barbers and cosmetologists which prohibited cosmetologists from cutting men's hair "violate[d] the equal protection clause of the 14th Amendment to the United States Constitution." *Bolton*, 350 F. Supp. at 494. As this office explained the *Bolton* holding in Attorney General Opinion M-1270, "In essence, the net effect of such holding is that females can get their hair cut and acquire other services of barbering in a barber shop if they so desire; and, males can get their hair cut, trimmed and shaped and acquire other services of cosmetology in a beauty shop, if they so desire." Tex. Att'y Gen. Op. No. M-1270 (1972) at 3.

Attorney General Opinions M-1270 and JM-990 both deal with the *Bolton* decision, and concern the question you raise. Attorney General Opinion M-1270 notes, in deciding whether a shop in which both barbering and cosmetological services are offered must be covered by both licensing

agencies, that under the statutes "only a licensed barber may perform the services of shaving and trimming the beard." *Id.* at 8. This question was considered, at more length, in JM-990, which summarizes the *Bolton* holding and notes the language in M-1270. While Opinion JM-990 notes the legislative distinction between "hair" and "the beard," it fails to define these terms. Tex. Att'y Gen. Op. No. JM-990 (1988).

The cases which, in the words of *People v. Taylor,* "leave to the market place the choice which individual males will exercise as to their hair cutting preference," 540 P.2d at 322, do not deal specifically with the issue of the trimming of beards and mustaches. Thus, for example, the three judge panel in *Pavone* said of its general effect on the Louisiana statutory scheme that "[a]part from the provisions discussed in this opinion, the system of regulation of these professions remains undisturbed." *Pavone,* 364 F. Supp. at 964. Similarly, Judge Goldberg wrote in a clarification of the *Bolton* panel judgment that "[i]t is the intent and holding of the Court that the judgment entered herein declare unconstitutional only those parts of the Texas law . . . [as] prohibit or limit a person licensed as a cosmetologist to perform cosmetology work on females only, and a person licensed as a barber to perform work on males only. No other parts, sections or provisions . . . are affected by the judgment and remain in full force and effect." *Bolton,* 350 F. Supp. at 494. We agree with Attorney General Opinion JM-990 that *Bolton,* like *Pavone,* did not attempt a wholesale reworking of the regulatory schemes involving barbers and cosmetologists. Accordingly, the definitional question remains to be considered.

The determination of the boundary between hair and the beard beyond which a licensed cosmetologist may not pass, requires technical expertise which this office does not purport to possess. In certain past opinions regarding jurisdictional boundary disputes between regulatory bodies, this office has held that such definitional matters were the responsibility of both entities. Thus in Attorney General Opinion DM-423, this office found that insofar as hyperbaric oxygen therapy was the practice of medicine it was subject to regulation by the Board of Medical Examiners, but that if and insofar as it was within the practice of podiatry, it was subject to regulation by the Board of Podiatric Examiners. Tex. Att'y Gen. Op. No. DM-423 (1996). Similarly, in Attorney General Opinion DM-443, we held that the development of general rules regulating the practice of needle electromyography "would require the cooperation of both [the Board of Medical Examiners and the Board of Physical Therapy Examiners], and is not within the province of either board exclusively." Tex. Att'y Gen. Op. No. DM-443 (1997) at 3. In those instances, however, the practices to be regulated were within the jurisdiction of both licensing bodies. Here, the cutting and trimming of the beard is exclusively within the practice of barbering. Since the Board is given authority under section 1601.151(d)(3) of the Occupations Code to "regulate any area of the practice of . . . barbering" and under section 1601.151(e) to "define any term necessary to administer or enforce" its statutory authority, it is within its province to determine, in effect, where hair leaves off and beard begins. Such a determination is, of course, subject to judicial review.

As the incident giving rise to your request suggests, a formal determination of this sort will permit licensed cosmetologists to know the extent of their rights and the boundaries beyond which they may not pass. Such notice to licensees is of great importance given the doctrine of "void for

vagueness," under which a statute must not be so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) (quoted in *Texas Antiquities Comm.*, 554 S.W.2d at 928) (plurality opinion).

The doctrine of void-for-vagueness is derived from the requirement of due process. "A vague statute offends due process in two ways. First, it fails to give fair notice of what conduct may be punished, forcing people to guess at the statute's meaning, . . . and threatening to trap the innocent. . . . Second, it invites arbitrary and discriminatory enforcement by failing to establish guidelines for those charged with enforcing the law, 'allow[ing] policemen, prosecutors, and juries to pursue their personal predilections.'" *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998) (citations omitted).

It is by no means always required that a person of ordinary intelligence guess whether what he or she is cutting is "a beard" or hair. A goatee such as those now in vogue, for instance, is certainly a beard. Difficulties arise, however, particularly with reference to sideburns. We think it likely that most observers would consider the sideburns worn by the late Elvis Presley at the time of his early success in 1956 as part of his hair. On the other hand, whether the muttonchops which adorned his face at the time of his death were hair which a cosmetologist might trim, or a partial beard which could be serviced only a barber, is a question which in the absence of any articulated standard might well present difficulties to a cosmetologist who wished to remain within his or her licensed practice.

"To survive a vagueness challenge, a statute need not spell out with perfect precision what conduct it forbids. 'Words inevitably contain germs of uncertainty.' . . . Due process is satisfied if the prohibition is 'set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with.'" *Id.* The courts of Texas have found that a regulation of the Liquor Control Board requiring licensed private clubs to provide "regular food service" and "complete meals" was not unconstitutionally vague, *Texas Liquor Control Board v. Attic Club*, 457 S.W.2d 41, 45 (Tex. 1970); that a regulation of the State Board of Insurance, deeming a "pattern of action" as prima facie evidence of the violation of the regulation was not vague, *Nunley v. State Board of Insurance*, 552 S.W.2d 624 (Tex. Civ. App.–Eastland 1977, writ ref'd n.r.e.); that a statute under which a nurse was disciplined for "unprofessional or dishonorable conduct which, in the opinion of the Board [of Nurse Examiners] is likely to injure the public" was not vague, *Murphy v. Rowland*, 609 S.W.2d 292 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd n.r.e.); that ordinances or county regulations forbidding the owning or operating of a sexually oriented business without a license were not vague, *State v. Garcia*, 823 S.W.2d 793 (Tex. App.–San Antonio 1992, writ ref'd), *Mayo v. State*, 877 S.W.2d 385 (Tex. App.–Houston [1st Dist.] 1994, no writ), *Memet v. State*, 642 S.W.2d 518 (Tex. App.–Houston [14th Dist.] 1982, writ ref'd); that the term "useful life" in a billboard amortization statute was not vague, *City of Houston v. Harris County Outdoor Advertising Ass'n*, 732 S.W.2d 42 (Tex. App.–Houston [14th Dist.] 1987, no writ); and that, while a disciplinary rule forbidding a lawyer to send a post-verdict communication to a juror calculated to "embarrass" the juror was fatally vague, the language in the same regulation forbidding such conduct if it was

calculated to "harass" the juror was not, *Commission for Lawyer Discipline v, Benton*, 980 S.W.2d 425 (Tex. 1998). In light of these cases, we cannot conclude that the distinction between "beard" and "hair" is so vague on its face as to fail the test of constitutionality.

Generally, the courts have been less stringent in applying the void for vagueness doctrine in regulatory or licensing cases than in the criminal context. *See State Bar of Texas v. Tinning*, 875 S.W.2d 403, 409 (Tex. App.–Corpus Christi 1994, writ denied); *Harris County Outdoor Advertising Ass'n*, 732 S.W.2d at 50; *Benton*, 980 S.W.2d at 437. Accordingly, a situation involving the imposition of administrative discipline upon a cosmetologist for practicing outside the scope of his or her license would excite less concern than a criminal prosecution for the misdemeanor of practicing barbering without a license. TEX. OCC. CODE ANN. § 1601.652 (Vernon 2000). Even in the criminal context, however, "[a] provision need not . . . be cast in terms that are mathematically precise; it need only give fair warning of the conduct prescribed, in light of common understanding and practice." *Garcia*, 823 S.W.2d at 798.

Though the statutory distinction is not void for vagueness on its face, it may in certain instances be too vague as applied. As we have noted before, the difficulty which may arise in this context relates to the application of the statutory distinction at the margins. However, "[s]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language," *Harris County Outdoor Advertising Ass'n*, 732 S.W.2d at 50. In this instance, the statute does not define the distinction between "hair" and "beard." But it would be disingenuous for this office to assert that such terms, known to every speaker of the English language, are recondite or *recherché*. The legislature has delegated to the Board the authority to "define any term necessary to administer and enforce" chapter 1601 of the Occupations Code. TEX. OCC. CODE ANN. § 1601.151(e) (Vernon 2000). Such a determination, of course, is subject to review, particularly when as here the rule determines a boundary between the Board's jurisdiction and that of another regulatory body. But the initial determination belongs to the Board.

Accordingly, we conclude that the power to determine the boundary between hair and the beard is that of the Board of Barber Examiners, subject to judicial review. An explicit demarcation of this boundary by the Board of Barber Examiners is necessary to allow licensed cosmetologists to conform their behavior to the statute, particularly in marginal cases.

## S U M M A R Y

The power to distinguish "hair" from "the beard" for the purposes of determining possible violations of section 1601.002(1)(A) of the Occupations Code is given by the legislature to the Board of Barber Examiners. An explicit demarcation of this boundary by the Board of Barber Examiners is necessary to allow licensed cosmetologists to conform their behavior to the statute, particularly in marginal cases.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee